Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 17, 2017

**2017 CO 25**

**No. 15SA330, <u>People v. Simpson</u>—Searches and Seizures—Warrantless Blood Draw—Consent to Search.**

Colorado's Expressed Consent Statute ("the Statute"), section 42-4-1301.1, C.R.S. (2016), provides that any motorist who drives on the roads of the state has consented to take a blood or breath test when requested to do so by a law enforcement officer with probable cause to suspect the motorist of driving under the influence.

In this interlocutory appeal, the supreme court reviews the trial court's ruling that an advisement accurately informing the defendant of the Statute amounted to coercion that rendered his consent to a blood test involuntary and required suppression of the test result.  The supreme court explains that by driving in Colorado, the defendant consented to the terms of the Statute, including its requirement that he submit to a blood draw under the circumstances present in this case.  The supreme court concludes that the defendant's prior statutory consent satisfied the consent exception to the warrant requirement under the Fourth Amendment; therefore, the blood test conducted in this case was constitutional.  Consequently, the supreme court reverses the trial court's suppression of the test result.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 25

### Supreme Court Case No. 15SA330

*Interlocutory Appeal from the District Court*
Arapahoe County District Court Case No. 15CR212
Honorable F. Stephen Collins, Judge

### Plaintiff–Appellant:

The People of the State of Colorado,

v.

### Defendant–Appellee:

William Paul Simpson.

### Order Reversed
*en banc*
April 17, 2017

**Attorneys for Plaintiff–Appellant:**
George H. Brauchler, District Attorney, Eighteenth Judicial District
Jennifer Gilbert, Deputy District Attorney
Richard Orman, Senior Deputy District Attorney
   *Centennial, Colorado*

**Attorneys for Defendant–Appellee:**
Douglas K. Wilson, Public Defender
Elsa Archambault
Lucienne Ohanian
   *Centennial, Colorado*

**Attorneys for Amici Curiae Denver District Attorney's Office and Colorado District Attorneys' Council:**
Mitchell R. Morrissey, District Attorney, Second Judicial District
Katherine A. Hansen, Deputy District Attorney
   *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE EID** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE COATS** join in the concurrence in the judgment.

2

¶1 Colorado's Expressed Consent Statute provides that any motorist who drives on the roads of the state has consented to take a blood or breath test when requested to do so by a law enforcement officer with probable cause to suspect the motorist of driving under the influence. In this interlocutory appeal, we review the trial court's ruling that an advisement accurately informing the defendant, William Paul Simpson, of this law amounted to coercion that rendered his consent to a blood test involuntary and required suppression of the test result.

¶2 By driving in Colorado, Simpson consented to the terms of the Expressed Consent Statute, including its requirement that he submit to a blood draw under the circumstances present here. That prior statutory consent eliminated the need for the trial court to assess the voluntariness of Simpson's consent at the time of his interaction with law enforcement. Simpson's prior statutory consent satisfies the consent exception to the warrant requirement under the Fourth Amendment. Therefore, the blood draw at issue here was constitutional. Accordingly, we reverse the trial court's suppression of the blood-draw evidence.

## I. Facts and Procedural History

¶3 On January 25, 2015, Officer Mason MacDonald saw a pickup truck bounce off a curb four times, turn across a median, and then oversteer into oncoming traffic while entering an apartment complex parking lot. Officer MacDonald turned on his overhead lights and followed the truck into the parking lot. The truck initially stopped but then slowly crept forward.

¶4    Eventually, the truck came to a full stop.  Officer MacDonald approached and found Simpson in the driver's seat.  Officer MacDonald immediately smelled alcohol on Simpson's breath and saw that Simpson's eyes were red and watery.  He asked Simpson whether he had been drinking, and Simpson replied in the affirmative.  He asked Simpson to get out of the truck, but Simpson was unable to comply without assistance.  Simpson was ultimately transported to the hospital for medical attention.

¶5    At the hospital, Officer MacDonald read Simpson an expressed consent advisement form titled "Colorado Express Consent Law Information."  In relevant part, the form stated:

1.  By driving a motor vehicle in Colorado, you have agreed to submit to a blood or breath test to determine the alcohol content of your blood or breath if a police officer has probable cause to believe you have been driving a motor vehicle while under the influence of, or impaired by, alcohol.

. . . .

5.  A refusal to sign any release or consent forms required by a person authorized to take or withdraw specimens is a refusal to submit to the required tests.

6.  The results of the test, or your refusal to take the test, can be used against you in court.

7.  If you refuse to submit to a test, your driving privilege will be revoked for one year.  This revocation would be in addition to any penalties resulting from the charges filed against you.

The bottom of the form asked, "Which test do you choose to submit to?" and instructed the reader to initial the appropriate line, with one line for blood and one for breath.

¶6    Officer MacDonald explained that because breath tests were unavailable in the hospital, he would be able to offer Simpson a blood test only.  He gave Simpson the

4

expressed consent form to read. Simpson reviewed the form and then initialed it on the line labeled "BLOOD." Simpson also signed the "Officer's signature" line, instead of the line designated for the test-taker's signature. A nurse completed the blood draw, which revealed that Simpson had a blood-alcohol content of 0.448, more than five times the level necessary by statute to permit an inference of driving under the influence of alcohol ("DUI"), § 42-4-1301(6)(a)(III), C.R.S. (2016).

¶7    Simpson was charged with DUI, among other offenses related to the incident. Before trial, he filed a suppression motion claiming that the blood draw was an unconstitutional search. In support of that motion, Simpson claimed he was too drunk to give valid consent to a search and that at his level of intoxication, even the slightest police direction amounted to coercion.

¶8    At a motions hearing, the trial court found that the reading of the expressed consent advisement, due to its "express threats and statements that [the driver has] already consented to submit to a blood and breath test to determine alcohol content," was coercive. The court concluded that any consent given after the reading of this advisement could not be voluntary, so it determined that Simpson's consent was invalid and the search was unconstitutional. Accordingly, the trial court suppressed the blood-draw evidence.

¶9    The next day, supplementing its oral ruling, the trial court published a written order concerning Simpson's motion to suppress the blood test results. First, the court revisited its voluntariness determination, explaining that the expressed consent form and Officer MacDonald's statement that only a blood test was available "would cause

5

any reasonable person (and certainly a person in Defendant's highly inebriated condition) to conclude that they had no choice but to submit to the blood test and, thus, . . . rise to the level of undue influence exercised against Defendant which renders his alleged consent involuntary."

¶10 The court later expressed concern that it had neglected to address all issues related to the constitutionality of the search at the hearing and examined whether, despite the absence of voluntary consent, the blood draw might nevertheless be justified as reasonable due to exigent circumstances. The court concluded that no such circumstances existed. It therefore reaffirmed its suppression ruling.

¶11 The People filed this interlocutory appeal pursuant to section 16-12-102(2), C.R.S. (2016), and C.A.R. 4.1.

## II. Standard of Review

¶12 Review of a trial court's suppression order presents a mixed question of law and fact. People v. Munoz-Gutierrez, 2015 CO 9, ¶ 14, 342 P.3d 439, 443. We defer to the trial court's findings of fact that are supported by the record, but we assess the legal effect of those facts de novo. Id.; see also People v. Chavez-Barragan, 2016 CO 66, ¶¶ 33–35, 379 P.3d 330, 338 (examining the standards of review this court has historically applied to questions of voluntariness); People v. Matheny, 46 P.3d 453, 459 (Colo. 2002) ("[W]hen a constitutional right is implicated . . . appellate courts should not defer to a lower court's judgment when applying legal standards to the facts found by the trial court.").

## III. Analysis

¶13     We begin by describing Colorado's Expressed Consent Statute.  Next, we review relevant Fourth Amendment principles, including the consent exception to the warrant requirement.  We then explain that by choosing to drive in Colorado, Simpson consented to the terms of the Expressed Consent Statute, including its requirement that he submit to a blood draw under the circumstances present here.  We conclude that this statutory consent satisfied the consent exception to the warrant requirement.  Therefore, the blood draw was constitutional.  Accordingly, we reverse the trial court's suppression order.

## A.  Colorado's Expressed Consent Statute

¶14     Colorado's Expressed Consent Statute ("the Statute"), section 42-4-1301.1, C.R.S. (2016), provides that "[a]ny person who drives any motor vehicle . . . throughout [the] state shall be deemed to have expressed such person's consent to the provisions of this section."  § 42-4-1301.1(1).  The Statute further declares:

> A person who drives a motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood or breath when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI . . . .

§ 42-4-1301.1(2)(a)(I).  The driver may choose between a blood or breath test, but a blood test will be administered if the driver is receiving medical treatment at a location where a breath testing instrument is unavailable.  § 42-4-1301.1(2)(a)(II).

¶15    The statutory scheme spells out the procedures to be followed if a driver refuses to submit to a test.  If the driver subsequently stands trial for driving under the influence, the "refusal to take or to complete, or to cooperate with the completing of, any test or tests shall be admissible into evidence at the trial."  § 42-4-1301(6)(d), C.R.S. (2016).  The individual's driver's license will also be revoked for at least one year. § 42-2-126(3)(c)(I), C.R.S. (2016).  These provisions do not create a statutory right to revoke consent.

## B.  The Fourth Amendment

¶16    The Fourth Amendment to the United States Constitution prohibits unreasonable governmental searches.  U.S. Const. amend. IV; Colo. Const. art. II, § 7; Eddie's Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils. Comm'n, 218 P.3d 326, 333 (Colo. 2009) ("The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures.").

¶17    A blood draw is a search implicating the Fourth Amendment.  Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016); see also Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013) (referring to a blood draw as "an invasion of bodily integrity" that "implicates an individual's 'most personal and deep-rooted expectations of privacy'" (quoting Winston v. Lee, 470 U.S. 753, 760 (1985))).

¶18    A warrantless search is reasonable only if it falls within a recognized exception to the Fourth Amendment warrant requirement.  People v. Schaufele, 2014 CO 43, ¶ 19, 325 P.3d 1060, 1064 (plurality opinion) (quoting McNeely, 133 S. Ct. at 1558).

¶19 The subject's voluntarily given consent is one such exception. See Birchfield, 136 S. Ct. at 2185 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). "Consent to search is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker,' and not the result of circumstances which overbear the consenting party's will and critically impair his or her capacity for self-determination." People v. Magallanes-Aragon, 948 P.2d 528, 530 (Colo. 1997) (quoting Schneckloth, 412 U.S. at 225). But if a search is "the result of duress or coercion, express or implied, or any other form of undue influence exercised against the defendant," it is involuntary. Id. at 531 (quoting People v. Cleburn, 782 P.2d 784, 787 (Colo. 1989)).

## C. The Blood Draw Was Constitutional

¶20 The trial court concluded that Simpson's consent to the blood draw was involuntary based on the language of the expressed consent advisement that Officer MacDonald read to Simpson. But Simpson had already consented to a blood draw before his encounter with Officer MacDonald, when he agreed to the terms of the Expressed Consent Statute by driving in Colorado. Because Simpson never revoked that consent, the blood draw was constitutional.

¶21 In People v. Hyde, 2017 CO 24, ¶ 3, __ P.3d __, which we announce today, we explain that a driver's consent to the Expressed Consent Statute, demonstrated by driving in the state of Colorado, satisfies the consent exception to the Fourth Amendment warrant requirement and renders a warrantless blood draw conducted under the Statute constitutional. This analysis applies to Simpson's case as well. By choosing to drive in Colorado, Simpson consented to the terms of the Expressed

9

Consent Statute, including its requirement that a driver "shall be required to take and complete" a blood-alcohol test if a law enforcement officer has probable cause to suspect him of a drunk-driving offense. § 42-4-1301.1(2)(a)(I). Simpson therefore consented to the blood draw.[1]

¶22 The trial court nevertheless appeared to believe it was required to find Simpson's consent invalid due to unresolved questions about the constitutionality of warrantless blood draws after Missouri v. McNeely, 133 S. Ct. 1552 (2013). In that case, the United States Supreme Court declined to create a per se rule justifying warrantless blood tests of all drunk-driving suspects on the basis of exigent circumstances created by the natural dissipation of alcohol from the bloodstream. Id. at 1563. Instead, the Court explained, the reasonableness of conducting a warrantless blood draw based on exigency must be assessed case by case based on the totality of the circumstances. Id. Then, in People v. Schaufele, 2014 CO 43, 325 P.3d 1060, a plurality of this court declined to adopt the People's proposed rule evaluating exigent circumstances based solely upon the length of time required to secure a search warrant in a drunk-driving

---

[1] In reaching this conclusion, we do not intend to suggest that a law enforcement officer may forcibly conduct a blood draw on an unwilling driver who has revoked his or her consent—in fact, the Expressed Consent Statute forbids such a practice, except when the driver is suspected of a limited number of enumerated crimes. § 42-4-1301.1(3) ("No law enforcement officer shall physically restrain any person for the purpose of obtaining a specimen of such person's blood, breath, saliva, or urine for testing except when the officer has probable cause to believe that the person has committed criminally negligent homicide . . . , vehicular homicide . . . , assault in the third degree . . . , or vehicular assault . . . , and the person is refusing to take or to complete [a test] . . . ."). Whether a forcible blood draw could be conducted under a broader statute lacking the current statute's protections is a question not before this court.

case, concluding instead that <u>McNeely</u> requires a totality-of-the-circumstances test. <u>Schaufele</u>, ¶¶ 2–3, 325 P.3d at 1062 (plurality opinion).

¶23    <u>McNeely</u> and <u>Schaufele</u> merely clarified that there is no per se exigency exception to the warrant requirement based on the natural dissipation of alcohol from a suspect's blood.  <u>See</u> <u>McNeely</u>, 133 S. Ct. at 1563; <u>Schaufele</u>, ¶¶ 2–3, 325 P.3d at 1062. These cases did not impose new requirements for justifying a warrantless blood draw, nor did they call into question the Expressed Consent Statute's clear statement that a driver consents to its provisions—including a potential blood-alcohol test—by driving in Colorado.  <u>McNeely</u> and <u>Schaufele</u> therefore should not have affected the trial court's reasoning, and do not alter our analysis.

¶24    After oral argument before us in Simpson's case, the Supreme Court underscored its conclusion that implied consent laws[2] are constitutional.  In <u>Birchfield v. North Dakota</u>, 136 S. Ct. 2160 (2016), the Court primarily addressed the search-incident-to-arrest exception to the warrant requirement, but it also discussed state implied consent laws.  It explained: "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply.  Petitioners do not question the constitutionality of those laws, <u>and nothing we say here should be read to cast doubt on them</u>."  <u>Id.</u> at 2185 (emphasis added) (citations omitted).  The Court invalidated only

---

[2] Though Colorado's statute is phrased in terms of "expressed consent," its language and effect are similar to "implied consent" laws in other states.  <u>Compare</u> § 42-4-1301.1 (Colorado's Expressed Consent Statute), <u>with</u> Mo. Rev. Stat. § 577.020 (2016) (Missouri's implied consent law), <u>and</u> Conn. Gen. Stat. § 14-227b (2016) (Connecticut's implied consent law).

laws that impose <u>criminal</u> penalties on a driver's refusal to submit to a blood test. <u>Id.</u> at 2185–86. Colorado's Expressed Consent Statute imposes only civil, and not criminal, penalties for refusal. Therefore, as we explain in <u>Hyde</u>, ¶ 26, <u>Birchfield</u> sanctions rather than forbids justifying a warrantless blood draw on the basis of statutory consent.

## IV. Conclusion

¶25 By driving in Colorado, Simpson consented to the terms of the Expressed Consent Statute, including its requirement that he submit to a blood draw under the circumstances present here. That prior statutory consent eliminated the need for the trial court to assess the voluntariness of Simpson's consent at the time of his interaction with law enforcement. Simpson's prior statutory consent satisfies the consent exception to the warrant requirement under the Fourth Amendment. Therefore, the blood draw at issue here was constitutional. Accordingly, we reverse the trial court's suppression of the blood-draw evidence.

**JUSTICE EID** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE COATS** join in the concurrence in the judgment.

JUSTICE EID, concurring in the judgment.

For the reasons I set forth in <u>People v. Hyde</u>, 2017 CO 24, __ P.3d __, I concur only in the judgment reached by the majority.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE COATS join in this concurrence in the judgment.