> Opinions of the Colorado Supreme Court are available to the
> public and can be accessed through the Judicial Branch's homepage at
> http://www.courts.state.co.us.  Opinions are also posted on the
> Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 17, 2017

**2017 CO 26**

**No. 15SC340, <u>Fitzgerald v. People</u>—Searches and Seizures—Refusal to Submit to Blood-Alcohol Testing—Admission of Refusal Evidence.**

The supreme court considers whether the prosecution's use of a defendant's refusal to consent to blood-alcohol testing as evidence of guilt at trial for a drunk-driving offense, in accordance with the terms of Colorado's Expressed Consent Statute, section 42-4-1301.1, C.R.S. (2016), violates the Fourth Amendment.  Because the use of such refusal evidence does not impermissibly burden a defendant's right to be free from unreasonable searches, the supreme court concludes that the use of such refusal evidence does not violate the Fourth Amendment.  The supreme court therefore affirms the judgment of the district court in this case.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 26

### Supreme Court Case No. 15SC340
*Certiorari to the District Court*
Arapahoe County District Court Case No. 14CV31801

#### Petitioner:

Daniel Fitzgerald,

v.

#### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
April 17, 2017

**Attorneys for Petitioner:**
Richards Carrington, LLC
Christopher P. Carrington
  *Denver, Colorado*

Foster Graham Milstein & Calisher, LLP
Chip G. Schoneberger
  *Denver, Colorado*

**Attorneys for Respondent:**
George H. Brauchler, District Attorney, Eighteenth Judicial District
Jennifer Gilbert, Deputy District Attorney
  *Centennial, Colorado*

**Attorneys for Amicus Curiae Colorado Attorney General:**
Cynthia H. Coffman, Attorney General
Glenn E. Roper, Deputy Solicitor General
L. Andrew Cooper, Deputy Attorney General
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado District Attorneys' Council:**
Colorado District Attorneys' Council
Thomas R. Raynes, Executive Director
 *Denver, Colorado*

First Judicial District Attorney's Office
Donna Skinner Reed, Chief Appellate Deputy District Attorney
 *Golden, Colorado*

**Attorneys for Amicus Curiae Mothers Against Drunk Driving (MADD):**
The Gold Law Firm, L.L.C.
Michael J. Rosenberg
Pamela B. Maass
 *Greenwood Village, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE EID** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE COATS** join in the concurrence in the judgment.

¶1 Colorado law provides that if a driver is suspected of driving under the influence of alcohol and refuses to take a test to determine the alcohol concentration of his blood or breath, then that refusal can be used as evidence against him at trial. Today, we are asked to decide whether the use of this "refusal evidence" violates a defendant's Fourth Amendment right to be free from unreasonable searches. We conclude it does not.

## I. Facts and Procedural History

¶2 A little after midnight on June 30, 2013, Detective Billy Todis saw the defendant, Daniel Fitzgerald, driving erratically with a headlight out, so he pulled him over and asked him to produce his driver's license, registration, and proof of insurance. While Fitzgerald struggled to find these documents, Detective Todis smelled alcohol in the car and noticed Fitzgerald had watery eyes. He asked Fitzgerald whether he had been drinking. Fitzgerald said he had consumed one beer. The detective asked Fitzgerald to perform voluntary roadside sobriety maneuvers. Fitzgerald declined.

¶3 After deciding to place Fitzgerald under arrest for driving under the influence ("DUI"), Detective Todis gave Fitzgerald an expressed consent advisement. According to the detective's testimony at trial, he first told Fitzgerald at the scene of the stop: "[B]y driving in the State of Colorado you automatically give your express consent to give a chemical test of your blood or breath when contacted by a peace officer for the investigation of a DUI." Later, at the police station, Detective Todis provided Fitzgerald with a written advisement form to the same effect as the oral advisement. Fitzgerald refused to take a chemical test of his blood or breath.

¶4 Before trial, Fitzgerald filed a motion in limine to prevent the prosecution from introducing evidence or commentary regarding his refusal to submit to a chemical test. He argued that introducing such evidence or commentary would penalize him for refusing to waive his Fourth Amendment right to be free from warrantless searches. The court denied Fitzgerald's motion.

¶5 At trial, Detective Todis testified regarding Fitzgerald's refusal to submit to a chemical test, and the prosecutor argued that Fitzgerald's refusal showed consciousness of guilt. The jury convicted Fitzgerald of driving while ability impaired ("DWAI"), a lesser-included offense of DUI.

¶6 Fitzgerald appealed his conviction to the district court. The district court affirmed, reasoning that under Colorado's expressed consent law, once Detective Todis had probable cause to believe Fitzgerald was driving under the influence, he had authority to request that Fitzgerald complete a chemical test of his blood or breath. Although Fitzgerald was free to decline that request, that right to refuse was statutory, not constitutional. The district court highlighted that the statute specifically authorizes use of a driver's refusal to consent as evidence of guilt. It therefore held that the trial court did not violate Fitzgerald's constitutional rights by admitting evidence of his refusal.

¶7 We granted Fitzgerald's petition for a writ of certiorari.[1]

---

[1] We granted certiorari to review the following reframed issue: "Whether the prosecution violated petitioner's rights under the Fourth Amendment to the United States Constitution by offering at trial—as evidence of guilt—petitioner's election not to consent to a warrantless, chemical search of his body."

4

## II. Standard of Review

¶8 The district court's ruling in this case was based on an interpretation of Colorado's Expressed Consent Statute and Fourth Amendment case law. Fitzgerald challenges the court's legal conclusion only; the facts of this case are not in dispute. Thus, we are presented with a question of law, which we review de novo. E-470 Pub. Highway Auth. v. 455 Co., 3 P.3d 18, 22 (Colo. 2000).

## III. Analysis

¶9 We begin by setting forth the background principles necessary for resolving this case: first, we explain Colorado's Expressed Consent Statute; second, we examine the Fourth Amendment; and third, we discuss prohibitions against penalizing the exercise of constitutional rights. We then address whether the trial court erred in admitting refusal evidence in this case, and we explain why recent decisions from the United States Supreme Court do not alter our analysis. We ultimately conclude that introducing evidence of Fitzgerald's refusal to consent to a blood or breath test did not impermissibly burden his Fourth Amendment right, and we therefore affirm the district court's judgment.

## A. Colorado's Expressed Consent Statute

¶10 Driving in Colorado is a statutory privilege, not a right. Colo. Dep't of Revenue v. Garner, 66 P.3d 106, 110 (Colo. 2003). In exchange for exercising that privilege, Colorado's Expressed Consent Statute provides:

> A person who drives a motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of the

5

person's breath or blood for the purpose of determining the alcoholic content of the person's blood or breath when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI . . . [or] DWAI . . . .

§ 42-4-1301.1(2)(a)(I), C.R.S. (2016). By driving in the state, a motorist consents to testing in accordance with this provision. § 42-4-1301.1(1), C.R.S. (2016) ("Any person who drives any motor vehicle . . . throughout this state shall be deemed to have expressed such person's consent to the provisions of this section.").

¶11 The statutory scheme spells out the procedures to be followed if a driver nevertheless refuses to take a test to determine blood-alcohol content ("BAC"). First, the individual's driver's license will be revoked for at least one year. § 42-2-126(3)(c)(I), C.R.S. (2016). Second, if the driver stands trial for DUI or DWAI, the "refusal to take or to complete . . . any test or tests shall be admissible into evidence at the trial, and a person may not claim the privilege against self-incrimination with regard to admission of [refusal evidence]." § 42-4-1301(6)(d), C.R.S. (2016). These provisions do not create a statutory right to revoke consent.

¶12 Fitzgerald contends that the trial court's order admitting such refusal evidence violated his Fourth Amendment right to be free from an unreasonable governmental search.

### B. The Fourth Amendment to the United States Constitution

¶13 The Fourth Amendment to the United States Constitution provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; see

6

<u>also</u> Colo. Const. art. II, § 7; <u>Eddie's Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils.</u> <u>Comm'n</u>, 218 P.3d 326, 333 (Colo. 2009) ("The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures."). Both blood draws and breath tests implicate concerns about invasions of bodily integrity and are deemed searches under the Fourth Amendment. <u>Skinner v. Ry. Labor Execs.' Ass'n</u>, 489 U.S. 602, 616–17 (1989); <u>see also</u> <u>Birchfield v. North Dakota</u>, 136 S. Ct. 2160, 2173 (2016) ("[O]ur cases establish that the taking of a blood sample or the administration of a breath test is a search.").

¶14    On the face of the Amendment, Fitzgerald loses. The Fourth Amendment's explicit prohibition is against an unreasonable search or seizure, neither of which occurred in this case. Fitzgerald acknowledges as much.

¶15    Nevertheless, Fitzgerald asserts a Fourth Amendment violation, based on the principle that it is unlawful to penalize the exercise of a constitutional privilege.

### C.  Prohibition Against Penalizing the Exercise of a Constitutional Privilege

¶16    Fitzgerald argues that because the Fourth Amendment grants an individual the right to be free from unreasonable searches, and a blood or breath test is a Fourth Amendment search, introducing a defendant's refusal to consent to a blood or breath test as evidence of guilt amounts to an impermissible penalty on the exercise of his Fourth Amendment right.

¶17    Fitzgerald's argument is rooted in <u>Griffin v. California</u>, 380 U.S. 609 (1965). In <u>Griffin</u>, the Supreme Court explained that when a criminal defendant fails to testify at

7

trial, commentary suggesting the jury should draw an inference of guilt from the defendant's silence is "a penalty imposed by courts for exercising a constitutional privilege" that "cuts down on the privilege by making its assertion costly." Id. at 614. The Court held that the Fifth Amendment therefore forbids the prosecution from commenting on a defendant's refusal to testify and forbids the trial court from instructing the jury that refusal is evidence of the defendant's guilt. Id. at 615.

¶18 We have extended the Supreme Court's reasoning in Griffin to prohibit imposing "penalties" on asserting other constitutional rights. For example, in Apodaca v. People, 712 P.2d 467, 473 (Colo. 1985), this court held that the trial court impermissibly burdened the defendant's due-process right to testify in his own defense when it refused to decide before he testified whether the prosecution could use his prior convictions to impeach his credibility. We determined that this deprived the defendant of "the meaningful opportunity to make the type of informed decision contemplated by the fundamental nature of the right to testify in one's own defense." Id.

¶19 But in the context of DUI refusal evidence, the Supreme Court has sharply curtailed the use of the Griffin penalty analysis. In South Dakota v. Neville, 459 U.S. 553, 554, 564 (1983), the Supreme Court considered whether admitting into evidence a defendant's refusal to submit to a blood-alcohol test violated his Fifth Amendment right against self-incrimination or his Fourteenth Amendment right to due process. Seventeen years before Neville, in Schmerber v. California, 384 U.S. 757, 764–65 (1966), the Supreme Court held that admitting the results of a compelled blood test at a defendant's DUI trial did not violate the Fifth Amendment because the evidence was

8

physical rather than testimonial. The <u>Schmerber</u> Court expressly reserved the question of whether use of refusal evidence violated the privilege against self-incrimination, but it noted that "general Fifth Amendment principles, rather than the particular holding of <u>Griffin</u>, would be applicable." <u>Id.</u> at 765 n.9. In <u>Neville</u>, the Court examined those principles and explained that the Fifth Amendment is limited to prohibiting compulsion or coercion, a requirement derived from the language of the Constitution itself. 459 U.S. at 562. Because the defendant was not compelled to refuse the blood-alcohol test but rather was given a choice between taking the test and refusing, the "values behind the Fifth Amendment [were] not hindered." <u>Id.</u> at 562–63. Ultimately, the Court held that "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." <u>Id.</u> at 564.

¶20 In a footnote, the <u>Neville</u> Court also observed: "Unlike the defendant's situation in <u>Griffin</u>, a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test. The specific rule of <u>Griffin</u> is thus inapplicable." <u>Id.</u> at 560 n.10. The Court explained that the right to refuse a blood or breath test is distinguishable from other rights because it is not a constitutional right but rather is "simply a matter of grace bestowed by the [state] legislature." <u>Id.</u> at 565. The Court concluded that the use of the refusal evidence "comported with the fundamental fairness required by Due Process." <u>Id.</u> at 566.

¶21 We adopted <u>Neville</u>'s reasoning in <u>Cox v. People</u>, 735 P.2d 153, 156–57 (Colo. 1987), when we held that admission of refusal evidence at a defendant's DUI trial does

not violate the Colorado Constitution's guarantees of freedom from self-incrimination and the right to due process. In Cox, we also considered whether refusal evidence is irrelevant or unduly prejudicial. Id. at 157. We reasoned that refusal is conduct that potentially shows a consciousness of guilt; therefore, refusal evidence is not per se inadmissible under CRE 401 and 403. See id. at 158–59.

¶22 While none of this bodes terribly well for Fitzgerald, he sees a glimmer of hope for his impermissible-penalty argument in two more recent Supreme Court cases analyzing requests for chemical testing under the Fourth Amendment: Missouri v. McNeely, 133 S. Ct. 1552 (2013), and Birchfield v. North Dakota, 136 S. Ct. 2160 (2016).

¶23 In McNeely, the Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." 133 S. Ct. at 1568. Fitzgerald acknowledges that McNeely did not concern the constitutionality of using a defendant's refusal against him at trial. Still, McNeely states that Fourth Amendment constraints apply to DUI investigations just as they would to any other crime. See id. at 1558 (explaining that blood draw is search subject to Fourth Amendment). Thus, Fitzgerald reasons that he remained at liberty to revoke his statutory expressed consent and assert his constitutional right to be free from an unreasonable warrantless search.

¶24 Fitzgerald's argument under McNeely falls short for at least four reasons. First, at its core, McNeely merely reiterated that there is no per se exigency exception for warrantless blood draws; it did not address whether a driver's refusal to submit to a blood or breath test can be used against him in court. Second, McNeely said nothing

10

about the impermissible-penalty argument Fitzgerald advances here. Third, the McNeely plurality discussed laws such as Colorado's Expressed Consent Statute with approval, characterizing them as "legal tools to enforce [states'] drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws." Id. at 1566 (plurality opinion). The plurality specifically noted that most states "allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." Id. Fourth, Fitzgerald's argument implies a constitutional right to refuse testing. As we explain in our decision in People v. Hyde, 2017 CO 24, ¶ 27, __ P.3d __, issued today, there is no such constitutional right.

¶25 Fitzgerald's reliance on Birchfield is similarly unavailing. In Birchfield, the Supreme Court consolidated three cases to decide "whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream." 136 S. Ct. at 2172. After considering the impact of blood and breath tests on individual privacy interests, id. at 2176–78, the Court concluded that "a breath test, but not a blood test, may be administered as a [warrantless] search incident to a lawful arrest for drunk driving," id. at 2185. The Court distinguished between the two types of tests because a breath test is significantly less intrusive and generally sufficient to meet state law enforcement needs. Id. Therefore, applying its conclusion to the cases before it, the Court overturned the conviction of the petitioner who was criminally prosecuted for refusing a warrantless blood draw but affirmed the conviction of the petitioner who was criminally prosecuted for refusing a warrantless breath test. Id. at 2186. But Birchfield is distinguishable from

11

the case we decide today, because <u>Birchfield</u> concerned the constitutionality of implied consent laws that <u>criminalize</u> a driver's refusal to undergo chemical testing. Unlike those laws, Colorado's Expressed Consent Statute merely allows a driver's refusal to submit to testing to be entered into evidence if the driver is prosecuted for DUI or DWAI. Colorado's law does not criminalize a driver's refusal to consent to a search. The Supreme Court noted this distinction in <u>Birchfield</u>, explaining: "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." <u>Id.</u> at 2185 (citations omitted).

¶26 In short, when there has been no search, the Supreme Court has all but said that anything short of criminalizing refusal does not impermissibly burden or penalize a defendant's Fourth Amendment right to be free from an unreasonable warrantless search. We take that short leap today and conclude that introducing evidence of Fitzgerald's refusal to consent to a blood or breath test to determine his BAC did not impermissibly burden his Fourth Amendment right.

## IV. Conclusion

¶27 The prosecution's use of a defendant's refusal to consent to a blood or breath test as evidence of guilt, in accordance with the terms of Colorado's Expressed Consent Statute, does not violate the Fourth Amendment. Accordingly, we affirm the judgment of the district court in this case.

**JUSTICE EID** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE COATS** join in the concurrence in the judgment.

JUSTICE EID, concurring in the judgment.

For the reasons I set forth in <u>People v. Hyde</u>, 2017 CO 24, __ P.3d __, I concur only in the judgment reached by the majority.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE COATS join in this concurrence in the judgment.