*970 JUSTICE EID,
concurring in the judgment.
¶ 33 I agree with the majority’s ultimate disposition in this case and in the two companion cases before the court, People v. Simpson, 2017 CO 25, 392 P.3d 1207, and Fitzgerald v. People, 2017 CO 26, 394 P.3d 671. I -write separately, however, to explain why I believe the results reached today are consistent with the rationale adopted in Birchfield v. North Dakota, — U.S. -, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). Specifically, Birchfield holds that traditional implied consent statutes such as Colorado’s— which deem drivers to have consented to BAC testing as a condition of driving upon the state’s roads and impose administrative and evidentiary consequences upon refusal to test—meet the dictates of the Fourth Amendment. In Birchfield, the Court reasoned that “inferr[ing]” such consent to search is reasonable, essentially as a matter of law, from the statutory “context.” Id. at 2185. This rationale easily disposes of the cases before us today. In Hyde, the defendant is deemed by statute to have consented to BAC testing by virtue of driving on the roads, making irrelevant his inability to consent (due to his unconscious state) at the scene. In Simpson, there is no impermissible coercion in informing the defendant that he has been deemed to have consented to testing as a result of driving, with administrative and evidentiary consequences for refusal, given that he was not threatened with criminal sanctions for refusal (the problem in Birchfield). And in Fitzgerald, there is no Fourth Amendment violation in imposing evi-dentiary sanctions for refusal to take a test to which the defendant was deemed to have impliedly consented. Because the majority does not fully embrace and apply this rationale, I respectfully concur only in the judgments it reaches.
¶34 As the majority points out, under Colorado’s Expressed Consent law—what other states call “implied consent”—anyone who drives in Colorado “shall be deemed to have expressed such person’s consent” to the provisions of section 42-4-1301.1, including taking a BAC test, either of breath or blood, when required to do so by a law enforcement officer. § 42-4-1301.1(1), (2)(a), C.R.S. (2016). If the driver refuses to submit to such testing, his or her driver’s license is revoked for a year or more, - § 42-2-126(3)(c)(I), C.R.S. (2016), and evidence of such refusal is admissible at a subsequent trial for certain driving-related offenses. § 42-4-1301(6)(d), C.R.S. (2016). If the driver is unconscious, he or she “shall be tested” through administration of a blood test. § 42-4-1301.1(8), C.R.S. (2016). In this instance, Hyde was unconscious; once at the hospital, his blood was drawn and tested.
¶35 Hyde argued before the trial court that the results of his blood test should be suppressed because he was given no opportunity to refuse the test due to his unconscious state. The trial court agreed. The court relied on the plurality opinion of this court in People v. Schaufele, 2014 CO 43, ¶28, 325 P.3d 1060, 1066 (plurality opinion), which appeared to cast doubt on the validity of implied consent as an adequate justification under the Fourth Amendment. Specifically, the Schaufele plurality stated, in a passage cited by the trial court in this case, “[T]he trial court [in Schaufele] correctly noted that, notwithstanding Missouri’s implied consent statute, the Supreme Court presumed in [Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) (plurality opinion) ] that the Fourth Amendment requires a search warrant before a blood draw, absent exigent circumstances. And it correctly noted that our own case law makes clear that Colorado’s express consent statute does not abrogate constitutional requirements.” Schaufele, ¶ 28, 325 P.3d at 1066 (emphasis added) (citation omitted). This passage from the Schau-fele plurality seems to suggest that implied consent was not sufficient to justify a war-rantless blood draw, and that instead the police would h§ve to rely on exigent circumstances. See also id. at ¶ 22, 325 P.3d at 1065 (“Like Schaufele, the defendant [in McNeely] was subject to a statutory implied consent law due to his operation of a motor vehicle. Yet he successfully moved to suppress his blood draw results [on the ground that] ... the police officer who ordered it did not attempt to secure a warrant.” (citation and footnote omitted)). But see id. at ¶ 42, 325 P.3d at 1068 (stating that the plurality “[did] *971 not mean to imply that a warrant is always necessary in involuntary blood draw cases”).
¶36 Today, the majority implicitly—and correctly, in my view—rejects this implication from Schaufele, recognizing that “[i]n Birchfield, the Court endorsed the use of implied consent laws like Colorado’s Expressed Consent Statute to secure BAC evidence in compliance with the Fourth Amendment.” Maj. op. ¶ 21; see also id. at ¶29 n.5 (noting that there is no conflict between the result it reaches and the Schaufele plurality’s statement that the expressed consent statute does not abrogate constitutional requirements, as those requirements are met by the statute). But the majority goes no further in analyzing Birchfield’s rationale for its approval of implied consent statutes like Colorado’s. See, e.g„ maj. op. ¶¶ 21, 25 (noting Birchfield’s approval of implied consent laws).
¶ 37 The Court in Birchfield reasoned that traditional implied consent laws like Colorado’s—namely, laws that deem a person to have consented to BAC testing by virtue of driving, with administrative and evidentiary consequences for refusal to test—are reasonable under the Fourth Amendment. The initial question before the Court was whether a blood or breath test could be performed consistent with the Fourth Amendment as a search incident to arrest. See 136 S.Ct. at 2174 (“We therefore consider how the search-incident-to-arrest doctrine applies to breath and blood tests incident to such arrests.”). The Court stated that breath tests do not implicate significant privacy concerns, emphasizing that “the physical intrusion [of the breath test] is almost negligible.” Id. at 2176. Blood tests, by contrast, are significantly more intrusive, and “placet ] in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading.” Id. at 2178, The Court went on to consider the need for BAC testing, which it determined to be “great.” Id. at 2184. “Having assessed the effect of BAC tests on privacy interests and the need for such tests,” the Court concluded that a war-rantless breath test, but not a warrantless blood test, could be conducted as a search incident to arrest. Id. at 2184-85.
¶ 38 Because the warrantless blood test could not be justified by the search-incident-to-arrest doctrine, the Court moved on to consider the state’s alternate argument; that the test was justified by the driver’s implied consent. Id. at 2185. In- considering whether the driver’s implied consent could justify the warrantless blood draw in question, the Court stated that “[i]t is well established that a search is reasonable when the subject consents.” Id (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Further, the Court stated that “sometimes consent to a search need not be express but may be fairly inferred from context.” Id For this proposition, the Court cited, inter alia, Marshall v. Barlow’s, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), which involved implied consent principles as applied to highly regulated industries.[1]
¶ 39 From here, the Birchfield Court emphasized: “Our prior opinions have referred approvingly >to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. See, e.g„ [McNeely and South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) ]. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.” 136 S.Ct. at 2185 (emphasis added). The problem with using implied consent in the case before it, however, was that North Dakota—unlike Colorado—“impose[d] criminal penalties on the refusal to submit to such' a test.” Id. According to the Court, “[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads,” id., and North Dakota had exceeded that limit by imposing a criminal sanction on refusal.
¶ 40 Importantly for the cases before us today, the Birchfield Court reaffirmed the *972 validity of implied consent statutes that “infer[]” consent from the “context” of the search. Id. For example, the Court cited to Marshall, where the question was whether implied consent could justify an OSHA search of a plumbing business. OSHA pointed to cases involving highly regulated industries where there is “such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise.” Marshall, 436 U.S. at 313, 98 S.Ct. 1816 (citation omitted). The Court recognized that “[t]he businessman in a regulated industry in effect consents to the restrictions placed upon him.” Id. (citation omitted). The Court rejected OSHA’s reliance on this rationale, however, reasoning that a plumbing business would fall outside the category of highly regulated businesses in which consent to a search is implied. Id.
¶ 41 In both Birchfield and Marshall, the Court looked at the overall statutory regime in which the search was to take place, not the individual facts at the time the search was conducted, to determine whether implied consent would apply. To use Birchfíeld’s terminology, the Court essentially “inferred” consent as a matter of law from the “context.” Driving on the roads and being engaged in a highly regulated industry are two such contexts from which consent can be inferred. Reinforcing this point, the Birch-field Court remanded the ease involving the Noxdii Dakota defendant for further proceedings to determine whether his consent was voluntary under the totality of the circumstances. 136 S.Ct. at 2186. Because implied consent could not support the search given the impermissible threat of criminal sanction, the Court left it to the state court on remand “to reevaluate [the defendant’s] consent given the partial inaccuracy of the officer’s advisory.” Id.
¶ 42 Applying this reasoning here, the defendants’ arguments in the three eases before us must fail. In this case, Hyde emphasizes that he was unconscious at the time and was incapable of consenting to the blood draw at the time it was performed. But in light of Birchfield, his consent is implied from the context of driving. In particular, section 42-4-1301.1(2)(a)(I) states that “[a] person who drives a motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of the person’s breath or blood ... when so requested and directed by a law enforcement officer.” (Emphasis added). Further, in the case of the unconscious driver such as Hyde, the driver is not “requested and directed” to take the test, but rather “shall be tested.” § 42-4-1301.1(8). Therefore, when the officers arrived at the scene, Hyde had already been deemed to have consented to a blood draw by virtue of the fact that he drove on the roads of Colorado. Under Birchfield, nothing more was necessary to comport with the Fourth Amendment. Thus, contrary to the trial court’s ruling in this case, it was of no consequence that Hyde was not in a position to consent at the scene, nor was it necessary for the police to obtain a warrant. Accordingly, the trial court’s suppression order should be reversed.
¶ 43 This rationale similarly disposes of the companion cases we address today. In Simpson, for example, the trial court’s suppression order was based on the same misunderstanding as the trial court’s ruling in this ease—namely, that implied consent is insufficient to satisfy the dictates of the Fourth Amendment. The trial court reasoned that Simpson’s consent could not be voluntary because he was presented with a form stating that, by driving in Colorado, he had consented to taking a BAC test, and would face administrative and evidentiary consequences for refusal. Hearing Tr. 89 (finding that the form contained “express threats and statements that [Simpson] already consented to submit to a blood and breath test” and stating that “[u]nder those circumstances, ... [the court] [has] to find that this does not constitute valid consent for [constitutional purposes]”).
¶ 44 The trial court’s reasoning is misguided because there can be no coercion in a form that accurately summarizes the relevant provisions of Colorado’s implied consent statute—namely, one that informs the defendant that a driver is deemed to have consented to *973 a BAC test by virtue of driving, and will face evidentiary and administrative consequences for refusing to be tested. Under Birchfíeld, implied consent is permissible here because, as noted above, the Colorado statute, unlike North Dakota’s, does not impose criminal sanctions for refusal to test, and Simpson makes no claim that he was threatened with criminal sanctions. Therefore, the majority should reverse the trial court’s suppression order on the ground that, because the form accurately summarized the relevant (and constitutionally sufficient) provisions of Colorado’s implied consent statute, it could not be coercive. Instead, the majority holds that there was no need for the trial court to assess Simpson’s consent at the time of his encounter with law enforcement, Simpson, 2017 CO 25, ¶ 25, 392 P.3d 1207, which is true, but only because the form was not coercive. See, e.g., Birchfield, 136 S.Ct. at 2186 (remanding case for voluntariness determination where implied consent could not support search given threat of criminal sanction).
¶ 45 Finally, in Fitzgerald, Fitzgerald argues that the introduction of evidence of his refusal to test at his trial for driving while ability impaired violated the Fourth Amendment. Fitzgerald’s argument must be rejected because, as noted above, the Birchfíeld Court held that statutes that imply consent to BAC testing from the act of driving, as well as impose evidentiary consequences for refusal, are reasonable under the Fourth Amendment. Therefore, the Supreme Court has more than “all but said” as much, as the majority concludes, Fitzgerald, 2017 CO 26, ¶ 26, 394 P.3d 671; it has said it. Accordingly, I would, on this ground, affirm the district court’s opinion affirming the county court’s disposition of the ease.
¶ 46 In the end, these three eases raise the same question: does Colorado’s statute providing for implied consent satisfy the dictates of the Fourth Amendment under the circumstances of these cases. All three should be resolved with the same answer: yes. I therefore concur only in the judgment reached by the majority in the three eases.
I am authorized to state that CHIEF JUSTICE RICE and JUSTICE COATS join in this concurrence in the judgment.

. The Birchfield Court also cited Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 1415-16, 185 L.Ed.2d 495 (2013); the context there involved the front porch, where one implicitly consents to visitors knocking on the door, but not to visitors conducting a dog sniff.