JUSTICE HOOD
delivered the Opinion of the Court.
¶ 1 The defendant, Oliver Hyde, was involved in a single-vehicle accident that left him unconscious. The police suspected that he might have been driving under the influence of alcohol. Hyde was transported to the hospital, and, in accordance with Colorado law, a sample of his blood was taken to establish his blood-alcohol concentration (“BAC”).
¶ 2 Hyde was charged with driving under the influence of alcohol (“DUI”). He sought to have the result of the blood test suppressed as evidence obtained through an illegal search in violation of the Fourth Amendment to the United States Constitution. The trial court granted his motion to suppress, and the People filed this interlocutory appeal.
¶3 In this opinion, we consider whether this warrantless blood draw violated the Fourth Amendment’s prohibition on unreasonable searches. By driving in Colorado, Hyde consented to the terms of the Expressed Consent Statute, including its requirement that he submit to blood-alcohol testing under the circumstances present here. Hyde’s statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement. We therefore conclude that in the circumstances presented here, the blood draw was constitutional. Accordingly, we reverse the trial court’s suppression order.
I. Facts and Procedural History
¶ 4 On February 10, 2015, just after midnight, Aurora Police Department (“APD”) officers responded to an accident at Iliff Avenue and 1-225, where the defendant had driven his pickup truck into a light pole, despite seemingly safe driving conditions. One of the first officers to arrive on the scene found Hyde unconscious, pinned in the driver’s seat, with blood gurgling from his mouth. She got within a few inches of Hyde to determine whether he was breathing and smelled alcohol. Passengers in the truck explained that they had attended a basketball game earlier that evening; one passenger stated that Hyde had consumed three beers. After fire personnel extracted Hyde from the *965 truck, an ambulance crew took him to a nearby hospital. En route, Hyde regained consciousness and became combative. Therefore, the ambulance crew sedated him.
¶ 5 APD requested that hospital staff perform a blood draw, which revealed that slightly less than two hours after the accident, Hyde’s BAC was 0.06. That BAC level permits an inference that Hyde drove while impaired by the consumption of alcohol. See § 42-4-1301(6)(a)(II), C.R.S. (2016). Because Hyde was unconscious, APD did not ask for his consent before ordering the blood draw. APD also did not seek a search warrant.
¶ 6 The People charged Hyde with DUI. Hyde sought to suppress the blood-draw evidence, arguing that the police lacked probable cause to request a blood-alcohol test and that, by conducting a warrantless draw without his contemporaneous consent, the police violated his Fourth Amendment right to be free from unreasonable searches.
¶ 7 The trial court found there was probable cause to believe Hyde was driving under the influence, but it agreed with Hyde that the warrantless blood draw, administered while he was unconscious and had no opportunity to refuse, violated the Fourth Amendment. Relying primarily on Missouri v. McNeely, — U.S. -, 133 S.Ct. 1652, 185 L.Ed.2d 696 (2013), and the plurality opinion in People v. Schaufele, 2014 CO 43, 325 P.3d 1060, the trial court reasoned that while Colorado’s Expressed Consent Statute, section 42-4-1301.1, C.R.S. (2016), deems drivers to have consented to a blood or breath test, this statutory consent did not satisfy the consent exception to the warrant requirement because it did not afford the unconscious driver the chance to return to consciousness and revoke his consent. The trial court therefore granted Hyde’s motion to suppress the blood-draw result.
¶ 8 The People filed this interlocutory appeal under section 16-12-102(2), C.R.S. (2016), and C.A.R. 4.1. They ask this court to determine whether the trial court erred in concluding that the warrantless blood draw violated the Fourth Amendment.
II. Standard of Review
¶ 9 Review of a trial court’s suppression order presents a mixed question of fact and law. People v. Munoz-Gutierrez, 2015 CO 9, ¶ 14, 342 P.3d 439, 443. We defer to the trial court’s findings of fact that are supported by the record, but we assess the legal effect of those facts de novo. Id.; see also People v. Chavez-Barragan, 2016 CO 66, ¶¶ 33-35, 379 P.3d 330, 338 (examining the standards of review this court has historically applied to questions of voluntariness); People v. Matheny, 46 P.3d 453, 459 (Colo.2002) (“[W]hen a constitutional right is implicated ... appellate courts should not defer to a lower court’s judgment when applying legal standards to the facts found by the trial court.”).
III. Analysis
¶ 10 We begin with an overview of the relevant provisions of Colorado’s Expressed Consent Statute and the Fourth Amendment to the United States Constitution. We then consider whether the blood draw conducted in this case was permissible under the Fourth Amendment. By driving in Colorado, Hyde consented to the terms of the Expressed Consent Statute, including its requirement that he submit to blood-alcohol testing under the circumstances present here. Hyde’s statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement. We therefore conclude that in the circumstances presented here, the blood draw was constitutional. Accordingly, we reverse the trial court’s suppression order.
A. The Legal Backdrop
¶ 11 With the rise of motor vehicle usage in the twentieth century, states found themselves confronting a grave problem: the devastating consequences of drunk drivers on the nation’s roadways. Birchfield v. North Dakota, — U.S. -, 136 S.Ct. 2160, 2167, 195 L.Ed.2d 560 (2016). In response, states enacted laws making it illegal to drive while intoxicated. Id. But a prohibition on drunk driving was not enough to conquer the problem. In order to obtain evidence necessary for securing convictions under the new laws, *966 states began to enact implied consent laws designed to encourage drivers to submit to blood-alcohol tests. See Comment, The Theory and Practice of Implied Consent in Colorado, 47 U. Colo. L. Rev. 723, 724 (1976); Colo. Legis. Council, Research Pub. No. 123, Highway Safety in Colorado 43 (1966) (“Advocates of implied consent argue that a much greater conviction rate could be obtained against persons charged with driving while under the influence than at present through adoption of implied consent legislation,”). These laws “require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense.” McNeely, 133 S.Ct. at 1566 (plurality opinion).
¶ 12 Colorado first enacted an implied consent statute in 1967. Ch. 356, sec. 2, § 18-6-30(3), 1967 Colo. Sess. Laws 753, 753-55. The current version of the law is the Expressed Consent Statute (“the Statute”),[1] codified at section 42-4-1301.1. The Statute provides that any person who drives in the state is required to submit to a test to determine the alcoholic content of the person’s blood or breath when requested to do so by a law enforcement officer who has probable cause to believe the person was driving under the influence of alcohol. § 42-4-1301.1(2)(a)(I). The Statute also states that “[a]ny person who drives any motor vehicle ... throughout [the] state shall be deemed to have expressed such person’s consent to .the provisions of this section.” § 42-4-1301.1(1).
¶ 13 A conscious driver who refuses to submit to a test is subject to certain administrative and evidentiary consequences spelled out in the statutory scheme. See § 42-2-126(3)(c)(I), C.R.S. (2016) (refusal leads to revocation of driver’s license); § 42-4-1301(6)(d), C.R.S. (2016) (refusal admissible at trial to prove guilt of DUI).
¶ 14 An unconscious driver, on the other hand, “shall be tested to determine the alcohol or drug content of the person’s blood.” § 42-4-1301.1(8). In other words, under the Expressed Consent Statute, the police need not wait until a drunk-driving suspect returns to consciousness, in order to afford that suspect an opportunity to refuse.
¶ 15 A blood draw conducted pursuant to the Statute must comport with the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures. U.S. Const. amend. IV; see also Colo. Const. art. II, § 7; Eddie’s Leaf Spring Shop & Towing LLC v. Colo,. Pub. Utils. Comm’n, 218 P.3d 326, 333 (Colo. 2009) (“The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures.”); McNeely, 133 S.Ct. at 1558 (majority opinion) (explaining that a blood draw is a search).
¶ 16 Before the government may conduct a search, the Fourth Amendment generally requires a warrant. .See Kentucky v. King, 563 U.S. 462, 459, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011), Still, “the ultimate measure of the constitutionality of a governmental search is ‘reasonableness.’” Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). A war-rantless search is reasonable if it falls within one of certain recognized exceptions to the warrant requirement. King, 563 U.S. at 459, 131 S.Ct. 1849; see also People v. Rodriguez, 945 P.2d 1351, 1359 (Colo.1997) (“Generally, warrantless searches and seizures are per se unreasonable unless they satisfy one of the specifically established and clearly articulated exceptions to the warrant requirement.”).
¶ 17 From time to time, the United States Supreme Court has been presented with cases questioning whether warrantless blood tests are nevertheless reasonable under the Fourth Amendment. In Schmerber v. California, 384 U.S. 757, 758-59, 86 S.Ct., 1826, 16 L.Ed.2d 908 (1966), law enforcement arrested the petitioner for DUI and ordered a blood test conducted despite the petitioner’s refusal to consent. The petitioner claimed the blood-test result was the product of an unconstitutional search and sought to have it excluded from evidence. Id. at 766-67, 86 *967 S.Ct. 1826. The Court explained that “the Fourth Amendment’s proper function is to constrain, not against all intrusions ..., but against intrusions which are not justified in the circumstances, or which are made in an improper manner.” Id. at 768, 86 S.Ct. 1826. In the specific circumstances presented in the petitioner’s case, the Court concluded that the need to procure BAC evidence before it was naturally eliminated from the petitioner’s blood justified the warrantless test. Id. at 770-71, 86 S.Ct. 1826 (“Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant.”).
¶ 18 More recently, in McNeely, the Supreme Court clarified that the body’s natural metabolization of alcohol does not create an exigency in all circumstances. 133 S.Ct. at 1663 (“[Wjhile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific ease, as it did in Schmerber, it does not do so categorically.”). However, while the Court rejected a per se exigency justification for warrantless blood tests, the plurality spoke approvingly of implied consent laws such as Colorado’s as alternate means for states to enforce their drunk-driving laws and secure BAC evidence. Id. at 1566 (plurality opinion).
¶ 19 The Supreme Court’s latest examination of warrantless blood tests in the drunk-driving context occurred last term, when the Court decided Birchfield v. North Dakota, — U.S. -, 136 S.Ct. 2160, 195 L.Ed.2d 560. In that case, a trio of petitioners challenged state laws imposing criminal—rather than merely administrative or evidentiary— penalties on lawfully arrested drivers who refuse to submit to blood or breath testing. See id. at 2185. On its way to reaching a determination on the validity of those laws, the Court considered whether the search-incident-to-arrest exception to the Fourth Amendment warrant requirement can justify warrantless chemical testing. The Court concluded that a warrantless breath test is constitutionally permissible as a search incident to a lawful arrest for drunk driving, but a blood test, which it found more intrusive, is not. Id. at 2184-85.
¶ 20 Although the Birchfield Court ruled out justifying warrantless blood tests on the basis of the search-incident-to-arrest exception, it expressed approval for justifying them on the basis of still another exception: consent. The consent exception to the warrant requirement may justify a warrant-less search if it is “the product of an essentially free and unconstrained choice by its maker.” People v. Licea, 918 P.2d 1109, 1112 (Colo.1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Consent is involuntary if it is “the result of duress or coercion, express or implied, or any other form of undue influence exercised [by the police] against the defendant.” Munoz-Gutierrez, ¶ 17, 342 P.3d at 444 (alteration in original) (quoting People v. Magallanes-Aragon, 948 P.2d 528, 531 (Colo.1997)).
¶ 21 In Birchfield, the Court endorsed the use of implied consent laws like Colorado’s Expressed Consent Statute to secure BAC evidence in compliance .with the Fourth Amendment. The Court explained: “It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context.” 136 S.Ct. at 2185 (citation omitted). The Court went on to affirm the constitutionality of implied consent laws that impose civil penalties and evidentiary consequences on drivers who refuse to comply with blood-alcohol testing, id, as the Expressed Consent Statute does.
¶ 22 With this legal backdrop in mind, we now consider whether the warrantless blood draw conducted while Hyde was unconscious violated the Fourth Amendment.
B. The Blood Draw Was Constitutional
¶ 23 By choosing to drive in the state of Colorado, Hyde gave his statutory consent to chemical testing in the event that law enforcement officers found him unconscious and had probable cause to believe he *968 was guilty of DUI.[2] § 42-4-1301.1(1) (“Any person who drives any motor vehicle ... throughout this state shall be deemed to have expressed such person’s consent to the provisions of [the Expressed Consent Statute].”).
¶ 24 Hyde’s statutory consent also satisfied the consent exception to the Fourth Amendment warrant requirement.[3] This conclusion flows from recent Supreme Court precedent. As discussed above, in McNeely, 133 S.Ct. at 1563 (majority opinion), the Supreme Court held that there is no categorical, per se exigency exception to the warrant requirement based on the natural dissipation of alcohol in the bloodstream. While Hyde suggests that this means that all warrantless, non-exigent, forced blood draws are unconstitutional, McNeely was not so broad. McNeely concerned the exigenhcircumstances exception exclusively. And the McNeely plurality underscored the utility of implied consent laws such as Colorado’s Expressed Consent Statute. See id at 1566 (plurality opinion).
¶ 25 The Supreme Court reaffirmed its approval of implied consent laws in Birch-field. The respondents in that case argued that warrantless blood draws “are justified based on the driver’s legally implied consent to submit to them.” Birchfield, 136 S.Ct. at 2185. In response, the Court explained: “Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.” Id. (emphasis added) (citations omitted).
¶ 26 True, the Court’s approval extended only to implied consent laws that impose civil penalties if a driver refuses to take a blood test; the Court considered laws that impose criminal penalties on a driver’s refusal to be going a step too far. See id. But Colorado’s Expressed Consent Statute falls into the former category—the Statute imposes only civil, and not criminal, penalties on drivers who refuse to submit to a blood test. Birchfield therefore sanctions the warrantless blood draw that was conducted here on the basis of statutory consent.[4]
¶ 27 So, any hope for Hyde’s claim that the blood draw was unconstitutional relies on the premise that drivers have a right to refuse a chemical test. But that premise is faulty: there is no constitutional right to refuse a blood-alcohol test. South Dakota v. Neville, 459 U.S. 553, 560 n.10, 103 S.Ct. 916, *969 74 L.Ed.2d 748 (1983) (“[A] person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test.”); Cox v. People, 735 P.2d 153, 155 n.3 (Colo.1987) (“[T]here is no constitutional right to refuse to submit to a chemical test for blood alcohol content.”); Brewer v. Motor Vehicle Div., 720 P.2d 564, 568 (Colo.1986) (same). To the contrary, any opportunity to refuse chemical testing is “simply a matter of grace bestowed by the [state] legislature.” Neville, 459 U.S. at 565, 103 S.Ct. 916.
¶ 28 The plain language of the Expressed Consent Statute indicates that the Colorado legislature did not intend to bestow that grace upon unconscious drivers. Section 42-4-1301.1(8) provides that an unconscious driver “shall be tested to determine [blood-alcohol content].” (Emphasis added.) The legislature’s use of the word “shall” in a statute generally indicates its intent for the term to be mandatory. See, e.g., Pearson v. Dist. Court, 924 P.2d 512, 516 (Colo.1996); People v. Dist. Court, 713 P.2d 918, 921 (Colo.1986). Thus, Hyde had neither a constitutional nor a statutory right to refuse the blood draw.
¶ 29 Hyde relies on Schaufele, which, like this ease, involved an unconscious driver and a warrantless blood draw suppressed by the trial court. But in Schaufele, the People sought—and were denied—a rule that would justify the warrantless blood draw based on the exigent-circumstances exception to the warrant requirement. See Schaufele, ¶¶ 2-3, 325 P.3d at 1062 (plurality opinion). Here, the People expressly waived exigent circumstances as a justification for the blood draw. Because exigent circumstances are not at issue, Schaufele is inapposite.[5]
¶ 30 Finally, we respond to Hyde’s argument that allowing a blood test on an unconscious driver violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const, amend. XIV, by treating an unconscious driver differently from a conscious driver, who is given the opportunity to refuse a test. Because section 42-4-1301.1(8) does not involve a suspect class or abridge a fundamental right, we analyze Hyde’s challenge under the rational basis standard of review. See Higgs v. W. Landscaping & Sprinkler Sys., Inc., 804 P.2d 161, 164 (Colo.1991). Under this standard, “a statutory classification will stand if it bears a rational relationship to legitimate governmental objectives and is not unreasonable, arbitrary, or capricious.” HealthONE v. Rodriguez ex rel. Rodriguez, 50 P.3d 879, 893 (Colo.2002). A classification analyzed under the rational basis standard is presumed to be constitutional, and the party challenging the classification bears the burden of proving its unconstitutionality beyond a reasonable doubt. Id.
¶ 31 Hyde has not met that burden. When drivers are unconscious, law enforcement officers are deprived of the evidence they typically rely on in drunk-driving prosecutions: unlike conscious drivers, unconscious drivers cannot perform roadside maneuvers, display speech or conduct indicative of alcohol impairment, or admit to alcohol consumption. In order to effectively combat drunk driving, the state needs some means of gathering evidence to deter and prosecute drunk drivers who wind up unconscious. Section 42-4-1301.1(8) satisfies that need. Therefore, Hyde’s equal protection challenge, like his Fourth Amendment claim, fails'.
IV. Conclusion
¶ 32 By driving in Colorado, Hyde consented to the terms of the Expressed Consent Statute, including its requirement that he submit to blood-alcohol testing under the circumstances present here. Hyde’s statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement. We therefore conclude that in the circumstances presented here, the blood draw was constitutional. Accordingly, we reverse the trial court’s suppression order.
JUSTICE EID concurs in the judgment, and CHIEF JUSTICE RICE and JUSTICE COATS join in the concurrence in the judgment.

., Though Colorado’s statute is phrased in terms of "expressed consent,” its language and effect are similar to "implied consent” laws in other states. Compare § 42-4-1301.1 (Colorado's Expressed Consent Statute), with Mo, Rev. Stat. § 577.020 (2016) (Missouri's implied consent law), and Conn. Gen. Stat. § 14-227b (2016) (Connecticut's implied consent law).

. We recognize that section 42-4-1301.1(8) does not explicitly mention probable cause. But it mandates that "[a]ny person who is dead or unconscious shall be tested to determine the alcohol or drug content of the person's blood ... as provided in this section.” § 42-4-1301.1(8) (emphasis added). We read "as provided in this section” to incorporate the probable cause requirement contained in section 42-4-1301.1(5), which states: "The tests shall be administered at the direction of a law enforcement officer having probable cause to believe that the person had been driving a motor vehicle in violation of [the prohibitions on DUI]....” The People do not dispute the existence of this probable cause requirement. Hyde does not now challenge the trial court's factual determination that there was probable cause to believe that he was driving under the influence,

. While we reach this conclusion in the unconscious-driver situation presented here, we do not intend to suggest that a law enforcement officer may forcibly conduct a blood draw on any driver who has revoked his or her statutory consent by refusing to submit to a blood-alcohol test—in fact, the Expressed Consent Statute forbids forced draws, except when there is probable cause to believe the driver has committed one of a limited number of enumerated crimes. § 42-4-1301.1(3) ("No law enforcement officer shall physically restrain any person for the purpose of obtaining a specimen of such person's blood, breath, saliva, or urine for testing except when the officer has probable cause to believe that the person has committed criminally negligent homicide ..., vehicular homicide .... assault in the third degree ..., or vehicular assault ..., and the person is refusing to take or to complete [a test]....”).

.In Birchfield, the Court briefly touched on the problem of securing BAC evidence from unconscious drivers, noting that "the police may apply for a warrant if need be.” Id. at 2184-85. But this statement was made in the context of the Court’s discussion of whether blood draws may be justified under the search-incident-to-arrest exception to the warrant requirement. The Court concluded that they may not. Id at 2185. The Court approved of the use of implied consent laws to secure BAC evidence, id., and the Birch-field opinion does not call into question the constitutionality of section 42-4-1301.1(8).

. Furthermore, we do not see any conflict with the plurality’s statement in Schaufele that "Colorado's express consent statute does not abrogate constitutional requirements.” Id. at 1128, 325 P.3d at 1066. Our holding today makes clear that Colorado's Expressed Consent Statute complies with constitutional requirements by satisfying the consent exception to the warrant requirement.