Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 29, 2019

**2019 CO 30**

**No. 16SC783, *Gow v. People*—Fourth Amendment—Voluntary Nature in General—Validity of Consent.**

In this case, the supreme court is asked to decide whether the defendant's federal and state constitutional rights were violated when he was subjected to a pat down and search of a box that he was carrying before accepting a courtesy ride with a sheriff's deputy.  The court now concludes that the pat down and search of the box were constitutionally permissible because on the facts as found by the trial court, the defendant initiated the encounter with the deputy by asking for a courtesy ride and then voluntarily and expressly consented to the pat down and search of the box as preconditions of getting into the deputy's car.

Accordingly, the court affirms the judgment of the division below, although the court's analysis rests on narrower grounds from those on which the division relied.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 30**

**Supreme Court Case No. 16SC783**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA921

**Petitioner:**

Tommy Allen Gow,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
April 29, 2019

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Julia Chamberlin, Deputy Public Defender
        *Denver, Colorado*

**Attorneys for Respondent:**
Phillip J. Weiser, Attorney General
Rebecca A. Adams, Senior Assistant Attorney General
        *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 In this case, we are asked to decide whether Tommy Allen Gow's federal and state constitutional rights were violated when he was subjected to a pat down and search of a box that he was carrying before accepting a courtesy ride with a sheriff's deputy.[1] We now conclude that the pat down and search of the box were constitutionally permissible because on the facts as found by the trial court, Gow initiated the encounter with the deputy by asking for a courtesy ride and then voluntarily and expressly consented to the pat down and search of the box as preconditions of getting into the deputy's car. Accordingly, we affirm the judgment of the division below, although our analysis rests on narrower grounds than those on which the division relied.

## I. Facts and Procedural History

¶2 At approximately 2:15 a.m., a Jefferson County Deputy Sheriff was driving through a residential neighborhood when he noticed a man walking down the street carrying a box. According to the deputy, he pulled up next to the man, got out of his patrol car, and asked "what he was up to." The man, Gow, responded that he had just come from a friend's house where he had purchased an iPad from the friend. He then asked the deputy if the deputy wanted to see his identification. The deputy said that he did, and after checking to make sure that Gow had no outstanding warrants, the deputy

---

[1] We granted certiorari to review the following issue:

> Whether the court of appeals erred in creating, as a matter of first impression, a search incident to a courtesy ride exception to the Fourth Amendment.

told Gow that he was free to leave. At some point during this interaction, Gow showed the deputy the iPad. The device was in its box, and the officer was only able to see the screen.

¶3 As Gow walked away, the deputy stayed in his patrol car and watched him. When Gow turned around a corner and left the deputy's sight, the deputy pulled up to the intersection where Gow had turned and continued watching him. Gow was looking around as he was walking, and the deputy continued to watch him walk away. The deputy then decided to drive down the street and leave the area. According to the deputy, as he was about to pass Gow, Gow began waving his hands at the deputy and signaled for the deputy to roll down his window. The deputy stopped and rolled down the passenger side window. Gow then walked up and asked the deputy to give him a ride to his friend's house, which was four blocks away. The deputy replied, "Sure," but said that he had to pat Gow down before allowing him to get into the car, to ensure that Gow did not have any weapons or anything illegal on him. According to the deputy, Gow responded, "Okay. I don't have weapons."

¶4 At that point, the deputy got out of his patrol car, patted down Gow, and asked to look inside the box again, to ensure that no weapons were hidden underneath the iPad in the box. Gow said, "Sure," and as he pulled out the iPad, the box fell to the ground and two small plastic baggies fell out. The deputy directed Gow to hand him the baggies, and Gow complied. The deputy then asked what was in them, and Gow responded that it was speed. The deputy arrested Gow and transported him to the Jefferson County jail. There, in the process of booking Gow, the deputy looked through Gow's wallet, and he

3

found another little plastic baggie containing a white crystal substance that the deputy believed to be additional narcotics. According to the deputy, when he asked Gow about this baggy, Gow responded, "Oh, I didn't even know I had that in there."

¶5 The prosecution subsequently charged Gow with possession of more than two grams of methamphetamine and possession of four grams or less of a schedule I controlled substance. Before trial, Gow moved to suppress, among other things, the evidence derived from his encounters with the deputy, including the drugs at issue, arguing that those encounters and the search of the iPad box violated his federal and state constitutional rights.

¶6 The trial court conducted a hearing on Gow's motion, and at this hearing, Gow testified, contrary to the deputy's testimony, that the deputy had approached him as he was walking down the street and "hollered" at him to come over. According to Gow, he approached the deputy and asked why the deputy was harassing him. The deputy responded that the department had received reports of people breaking into cars in the area. The deputy then asked what was in the box that Gow had in his hands, and Gow responded that he had an iPad. Gow opened the box and told the deputy that he had just bought it. He handed the box to the deputy, who handed it back and asked if Gow had anything that would poke, stick, or otherwise hurt the deputy. Gow responded, "No, sir," at which point the deputy said, "I am going to pat you down," which he proceeded to do. The deputy then asked Gow for identification. Gow provided his identification, the deputy ran a background check on it, and the deputy told Gow that he was free to leave. Gow walked away, but the deputy pulled up again and said that he was going to

4

search Gow. According to Gow, he did not signal the deputy to stop or request a ride. Gow testified that the deputy took the box, and the two baggies fell on the ground.

¶7    In an oral ruling, the trial court denied Gow's motion to suppress. The court recognized that the deputy's and Gow's accounts of the encounters at issue were in conflict. The court stated, however, that it was persuaded by the facts as relayed by the deputy. Based on those facts, and particularly on the facts that the deputy had used "no lights, no siren, no gun, [and] no force" and that the encounters reflected a "cooperative process" with "a common goal essentially of getting Mr. Gow from one place to another safely," the court found that the encounters between Gow and the deputy were consensual. In addition, with respect to the pat down, the court explained that it "certainly is logical . . . that one must make sure they are going to be safe in giving a ride to somebody . . . ." For these reasons, the court found that the pat-down search and search of the iPad box did not violate Gow's constitutional rights.

¶8    The case proceeded to trial, and the jury ultimately convicted Gow as charged. Gow appealed, arguing that the trial court had erred when it refused to suppress the evidence seized by the deputy when he subjected Gow to a pat-down search and search of the iPad box. In Gow's view, both of these searches violated his constitutional rights.

¶9    In a unanimous, published opinion, the division disagreed, holding:

> [T]here is no affront to the Fourth Amendment when a police officer requires a person who has voluntarily sought assistance, but whom the officer has no duty to assist, to undergo a pat-down search as a condition of entering a police vehicle, even when the officer does not have a reasonable, articulable suspicion that the person is armed and dangerous.

5

*People v. Gow*, 2016 COA 119M, ¶ 2, __ P.3d __. In so holding, the division "necessarily disagree[d]" with a prior division's ruling in *People v. Berdahl*, 2012 COA 179, ¶ 19, 310 P.3d 230, 235, in which that division had held that to justify a warrantless pat-down search of an individual before allowing entry into a police vehicle, an officer must have a reasonable, articulable basis to conclude that the person is armed and dangerous. *Gow*, ¶ 3.

¶10 Gow petitioned this court for certiorari review, and we granted his petition.

## II. Analysis

¶11 We begin by setting forth the applicable standard of review of a trial court's suppression order. We then discuss the principles governing the consent exception to the Fourth Amendment's warrant requirement and the circumstances in which consent is considered voluntary. Applying those principles here, we conclude that the deputy's pat down of Gow and search of the iPad box were constitutional because the trial court's amply supported factual findings demonstrate that Gow had initiated the encounter with the deputy by asking for a courtesy ride and then voluntarily and expressly consented to the pat down and search of the box as a precondition of getting into the deputy's car.

¶12 Accordingly, we affirm the judgment of the division below.

## A. Standard of Review and Applicable Legal Principles

¶13 Our review of a trial court's suppression order presents a mixed question of fact and law. *People v. Hyde*, 2017 CO 24, ¶ 9, 393 P.3d 962, 965. We defer to the trial court's factual findings if they are supported by the record, but we assess the legal effect of those facts de novo. *Id.* In our de novo review, we will correct the trial court's legal conclusions

6

if the court applied an erroneous legal standard to the facts of the case. *People v. Munoz-Gutierrez*, 2015 CO 9, ¶ 14, 342 P.3d 439, 443.

¶14    It has been long settled that a pat down, or a "frisk," is a search. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968). The United States and Colorado Constitutions protect persons against unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7. A search is presumptively unreasonable when it is conducted without a warrant unless the search falls within one of the well-established exceptions to the warrant requirement. *People v. Pate*, 71 P.3d 1005, 1010 (Colo. 2003).

¶15    As we explained in *People v. Berdahl*, 2019 CO 29, __ P.3d __, which we are also deciding today, voluntary consent is one such exception. "Consent is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker.'" *Id.* at ¶ 20 (quoting *Munoz-Gutierrez*, ¶ 16, 342 P.3d at 444). "It cannot be 'the result of circumstances which overbear the consenting party's will and critically impair his or her capacity for self-determination.'" *Id.* (quoting *People v. Magallanes-Aragon*, 948 P.2d 528, 530 (Colo. 1997)).

¶16    Consent is involuntary, however, if it is "the result of duress or coercion, express or implied, or any other form of undue influence exercised [by the police] against the defendant." *Id.* at ¶ 21 (quoting *Munoz-Gutierrez*, ¶ 17, 342 P.3d at 444). "Undue influence includes promises, threats, and intrusive or threatening police conduct." *Id.* (quoting *Munoz-Gutierrez*, ¶ 17, 342 P.3d at 444).

¶17    "Consent may be express, or it may be implied through words, actions, or both." *Id.* at ¶ 22.

7

¶18    "To assess whether a person's consent was voluntary, courts must apply an objective test that takes into account the totality of the circumstances and determines whether the defendant could reasonably have construed the police conduct to be coercive." *Id.* at ¶ 23.  In making this assessment, we consider, among other things, "the defendant's age, education, and intelligence; the duration, location, and circumstances of the search; the defendant's state of mind; and any other factors that could have affected the defendant's free and unconstrained choice in consenting to the search." *Id.*  This includes whether the defendant knew that he or she had a choice, although consent can be voluntary even if the defendant did not know that he or she was free to withhold consent. *Id.*  In this regard, we note that although Colorado statutory law provides that peace officers must explain to suspects that they have the right to refuse consent, an officer's failure to give this advisement is only one factor in determining the voluntariness of consent.  § 16-3-310(1)(b)(II), (3), C.R.S. (2018); *accord People v. Chavez-Barragan*, 2016 CO 66, ¶ 38, 379 P.3d 330, 339.

¶19    The essential consideration in determining the voluntariness of a defendant's consent to search is "the impact of overbearing, coercive, or deceptive police conduct on a person with the knowledge and particular characteristics of the defendant." *Magallanes-Aragon*, 948 P.2d at 533; *see also People v. Marujo*, 192 P.3d 1003, 1007 (Colo. 2008) (listing factors that may demonstrate that a reasonable, innocent person would not feel free to decline a police officer's request or to terminate an encounter).

8

## B. Application

¶20 Here, as noted above, the trial court credited the deputy's testimony over the often contrary testimony given by Gow and found that both encounters between the two men were consensual and did not violate Gow's constitutional rights. The court further found that the pat down was reasonable because it "certainly is logical . . . that one must make sure they are going to be safe in giving a ride to somebody . . . ." Although we acknowledge that Gow's description of the encounters at issue differed from that of the deputy, we must defer to the trial court's factual findings and credibility determinations because they are supported by the record. *See Hyde*, ¶ 9, 393 P.3d at 965.

¶21 The question thus becomes whether the trial court correctly concluded that the searches at issue were consensual. As noted above, we assess de novo the legal effect of the facts as found by the trial court. *See id.* Here, considering the totality of the circumstances in light of the factors set forth above, we agree that the searches at issue did not violate Gow's constitutional rights. We reach this conclusion for a number of reasons.

¶22 First, on the facts as found by the trial court, when the deputy advised Gow that he would need to conduct a brief pat down to confirm that Gow did not have any weapons or anything illegal on him, Gow responded, "Okay. I don't have weapons." Then, when the deputy asked to look in the iPad box to ensure that it also did not contain any weapons, Gow replied, "Sure." These responses evince express consent to the searches at issue.

¶23    Second, the facts as found by the trial court reflect no duress or coercion—express or implied—or any other form of undue influence on the deputy's part. To the contrary, upon Gow's request, the deputy agreed to give him a courtesy ride and then conducted the brief pat down and search solely to ensure that Gow did not have any weapons or anything illegal on him. As noted above, Gow expressly agreed to these searches.

¶24    Third, we perceive nothing about Gow's age, education, or intelligence that affected his ability to consent voluntarily, and Gow does not suggest that any such factor existed. The fact that Gow expressly agreed to a pat-down search and search of the iPad box as a precondition of his requested ride demonstrates that Gow understood the circumstances of the search and consented of his own volition.

¶25    Fourth, again on the facts as found by the trial court, Gow initiated the second encounter with the deputy by flagging him down and asking for a ride. Then, when the deputy told Gow that he would need to pat Gow down as a precondition of that ride, Gow readily agreed.

¶26    Finally, although the deputy did not expressly advise Gow of his right to refuse consent, this alone did not render his consent involuntary. As the trial court found, with record support, the interactions between Gow and the deputy were consensual and reflected "a cooperative process" with "a common goal essentially of getting Mr. Gow from one place to another safely." The record also shows that Gow fully understood the purpose for the limited searches, and he agreed with them as a condition of obtaining the courtesy ride that he had requested.

¶27     For these reasons, we conclude that under the totality of the circumstances, the deputy's actions in conducting the pat-down search and search of the iPad box did not violate Gow's federal or state constitutional rights.

### III. Conclusion

¶28     Because the trial court's factual findings and credibility determinations are amply supported by the record and reveal that Gow voluntarily and expressly consented to the pat down and search of the iPad box as preconditions of accepting a courtesy ride in the deputy's car, we conclude that those searches did not violate Gow's constitutional rights.

¶29     Accordingly, we affirm the judgment of the division below, although our analysis rests on narrower grounds from those on which the division relied.