22CA1266 Peo v Dent 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1266
Arapahoe County District Court No. 21CR268
Honorable Elizabeth Weishaupl, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Phillip Michael Dent,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE GROVE
Welling and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel Z. Geiman, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Phillip Michael Dent, appeals the judgment of conviction entered upon a jury verdict finding him guilty of aggravated motor vehicle theft and arson.  We reverse and remand for further proceedings consistent with this opinion.

## I.    Background

¶ 2    The prosecution presented evidence from which the jury could reasonably find the following facts.

¶ 3    On January 28, 2021, Dent stole Cindy Turco's minivan while she was at an automatic car wash in Littleton.  Security footage showed a man later identified as Dent approach Turco's driver side door while the car wash was running and demand that she get out.  Turco resisted, and Dent tried to pull her out of the van, grabbing her by the neck and biting her wrist in the process.  He eventually succeeded, and after "throwing [Turco] out of the car," Dent got in and drove away.

¶ 4    Three days later, Turco's van was found destroyed in a parking lot in Lakewood with its original South Dakota plates removed.  Investigators determined it had been intentionally set on fire.

¶ 5    A police detective issued a media bulletin asking for the public's help in identifying the carjacking suspect.  A former

roommate of Dent's called the detective and suggested Dent was responsible. She provided the detective with incriminating text messages from Dent in which he admitted to stealing a vehicle of the same make and model as Turco's at a car wash.

¶ 6    To locate Dent, police requested a search warrant for records maintained by his wireless phone service provider. A district court judge approved the warrant application, and T-Mobile USA (T-Mobile) subsequently turned over records within the scope of the warrant, including, among other things, GPS locations, text messages, and call data collected during the few weeks before and after the carjacking. Some of the records implicated Dent in the charged offenses.

¶ 7    Three months after the motions deadline had passed, and after the final pretrial conference, Dent filed a motion to suppress the records produced by T-Mobile pursuant to the search warrant. As relevant here, he argued that the warrant was overbroad and that "no probable cause was established to believe that any criminal offense occurred and/or that any material information would be produced from records" generated in the few weeks before the offense. In its response, the prosecution maintained that the

2

warrant was valid but, even if it was not, that the good faith exception to the exclusionary rule applied. The court addressed the motion from the bench on the morning of the first day of trial. Without taking evidence, the court ruled that the warrant established probable cause for the search and was sufficiently particular. In the alternative, the court found that the good faith exception to the exclusionary rule would apply in the event that the warrant was deemed invalid.

¶ 8 At trial, Dent admitted that he had committed robbery and third degree assault, and he does not appeal those convictions (or his conviction on a burglary charge arising from events after the theft of the van). He does, however, challenge his convictions for aggravated motor vehicle theft and second degree arson, arguing that the court erroneously denied the suppression motion and committed several evidentiary errors at trial. He also challenges $98.35 of the $2,125.33 that the trial court awarded in restitution.

¶ 9 We conclude that the trial court reversibly erred by admitting records provided by T-Mobile without establishing either that they were machine generated (and thus not hearsay) or that they qualified as business records (and were thus admissible under CRE

3

803(6)). However, because it will likely arise in the event of a retrial, we first consider Dent's challenge to the trial court's suppression ruling. Finally, because we leave three of Dent's convictions undisturbed, we address his challenge to the court's restitution award. We do not reach Dent's remaining evidentiary arguments because it is unclear whether they will arise again in the event that he is retried.

## II.     Suppression Motion

¶ 10     Dent contends that the trial court erroneously denied his motion to suppress the evidence obtained from the T-Mobile search warrant because the warrant was overbroad and lacked probable cause. We disagree.

### A.     Standard of Review

¶ 11     "A trial court's ruling on a motion to suppress presents a mixed question of fact and law." *Pettigrew v. People*, 2022 CO 2, ¶ 49. "We therefore 'defer to the trial court's findings of fact that are supported by the record, but we assess the legal effect of those facts de novo.'" *Id.* (quoting *People v. Hyde*, 2017 CO 24, ¶ 9). We also review de novo whether a "warrant and supporting affidavit

complied with the Fourth Amendment's particularity requirement." *Id.*

¶ 12    "We review preserved trial errors of constitutional dimension, including the admission of evidence obtained in violation of the Fourth Amendment, for constitutional harmless error." *Id.* at ¶ 50. "Under this standard, reversal is required unless the reviewing court can conclude that the error was harmless beyond a reasonable doubt." *Id.* "In other words, we will reverse if 'there is a reasonable *possibility* that the [error] might have contributed to the conviction.'" *Id.* (alteration in original) (quoting *Hagos v. People*, 2012 CO 63, ¶ 11).

### B.    Applicable Law

¶ 13    "The Fourth Amendment to the United States Constitution . . . prohibit[s] the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized." *People v. Rodriguez-Ortiz*, 2025 COA 61, ¶ 21.  "To prevent general, exploratory searches, the Fourth Amendment requires 'a "particular description" of the things to be seized.'" *People v. Coke*, 2020 CO 28, ¶ 34 (quoting *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)).

5

Courts consider "whether the description in a warrant is sufficiently particular that it enables the executing officer to reasonably ascertain and identify the things authorized to be seized." *People v. Roccaforte*, 919 P.2d 799, 803 (Colo. 1996). Likewise, to establish probable cause, a warrant affidavit must "allege facts sufficient to cause a reasonably cautious person to believe that evidence of criminal activity" exists in the place to be searched. *People v. Omwanda*, 2014 COA 128, ¶ 21. We review the totality of circumstances to determine whether probable cause exists. *People v. Miller*, 75 P.3d 1108, 1113 (Colo. 2003). "This analysis does not lend itself to mathematical certainties or bright line rules; rather, it involves a practical, common-sense determination whether a fair probability exists that a search of a particular place will reveal contraband or other evidence of criminal activity." *Id.*

## C.    Particularity

¶ 14    Dent contends that the T-Mobile warrant was overbroad and thus invalid because the first of its twenty paragraphs ordered T-Mobile to "provide any and all records for the subject telephone." Although Dent acknowledges that the remaining paragraphs in the affidavit made specific, time-constrained demands for certain

6

categories of information, he nonetheless asserts that the all-encompassing language in the first paragraph could be used to give law enforcement "virtually unfettered" access to Dent's phone records, *Coke*, ¶ 36, thereby turning the warrant into an impermissible "general warrant[]," *id.* at ¶ 34 (quoting *Andresen*, 427 U.S. at 480).

¶ 15    The People acknowledge the breadth of the warrant's first paragraph but maintain that it should not be "read in isolation" because it "is followed by nineteen more paragraphs of highly specific, often technical requests that *are* constrained by time and limited in scope by the probable cause that supported them" and expressly incorporates the accompanying affidavit. Thus, the People argue, when everything is read together in "a practical, common sense fashion," *Roccaforte*, 919 P.2d at 804, the first paragraph should not be interpreted as authorizing the "search and seizure of every document T-Mobile had for Dent's phone number." Instead, "[i]t is apparent that the first paragraph was intended to request the records that were spelled out in the detailed paragraphs that followed."

¶ 16    "The underlying purpose to be accomplished by the particularity requirement is to inform the executing officers of the limitations on the search and to inform the person subjected to the search what items the officers executing the warrant can seize." *People v. Slusher*, 844 P.2d 1222, 1227 (Colo. App. 1992).  Here, notwithstanding the remainder of the warrant and the context provided by the accompanying affidavit, the plain language of the warrant's first paragraph placed no limitations, whether temporal or otherwise, on the data that T-Mobile was required to provide.  *See Rodriguez-Ortiz*, ¶ 18 (holding that the search warrant for records held by a wireless provider was not overbroad, in part because "the warrant limited the search to a six-month time period in which all the crimes under investigation occurred").  As a result, and although adopting such a broad interpretation would render the warrant's more specific requests superfluous, the officer who presented the warrant to T-Mobile could have relied on its plain language to demand every record associated with Dent's account. *See Slusher*, 844 P.2d at 1227.

¶ 17    Accordingly, the search warrant's demand for the production of "any and all records for the subject telephone and telephone

number" rendered it overbroad and insufficiently particular to withstand constitutional scrutiny. Even if casting a dragnet for records held by T-Mobile, as Dent's wireless carrier, may have been somewhat narrower than an unbounded collection of data held on the phone itself, the scope of the records requested still allows for a general rummaging through Dent's personal information. *See Coke*, ¶ 34 ("'[G]eneral warrants,' which permit 'a general, exploratory rummaging in a person's belongings,' are prohibited." (quoting *Andresen*, 427 U.S. at 480)). We therefore conclude that the search warrant violated the Fourth Amendment's particularity requirement.

### D.  Probable Cause

¶ 18    We reach the opposite conclusion with respect to probable cause. Dent argues that those sections of the warrant that did identify specific records (as opposed to the general search authorized by the first paragraph) did not "establish probable cause for all of the records requested." But the officer's goal in requesting the warrant was to use it as a tool to help find Dent in circumstances where police feared that his "criminal behavior [was] escalating." As the officer attested, the requested information was

9

"necessary and relevant to the investigation, and [would] assist in locating the subject."

¶ 19 "[I]t is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals." *Warden v. Hayden*, 387 U.S. 294, 306 (1967). To that end, courts have regularly approved of warrants intended to collect data held by wireless service providers that could aid in the apprehension of fugitive suspects. *See, e.g.*, *United States v. Artis*, 919 F.3d 1123, 1134 (9th Cir. 2019) (affirming validity of warrant for cell phone data used to track down fugitive); *United States v. Patrick*, 842 F.3d 540, 542 (7th Cir. 2016) ("Police were entitled to use a warrant to obtain data [from a fugitive's cell phone] that would help them track down [the fugitive's] location."); *In re Smartphone Geolocation Data Application*, 977 F. Supp. 2d 129, 137 (E.D.N.Y. 2013) ("[When] the Government demonstrates probable cause to believe that prospective geolocation data will aid in the apprehension of a defendant, a court may issue a search warrant to authorize access to such data.").

¶ 20    Consistent with these authorities, the affidavit underlying the search warrant here "allege[d] sufficient facts to warrant a person of reasonable caution to believe," *Miller*, 75 P.3d at 1112, that the data collected would assist in locating Dent.

## E.    Good Faith Exception

¶ 21    Having determined that the search warrant was supported by probable cause but was nonetheless overbroad, we turn next to whether suppression was warranted.  The trial court concluded that it was not, ruling in the alternative that the good faith exception to the exclusionary rule would apply even if the warrant was constitutionally infirm.  We agree with that determination.

¶ 22    The usual remedy for an invalid warrant is the suppression of all evidence seized pursuant to the warrant.  *Roccaforte*, 919 P.2d at 802.  In *United States v. Leon*, 468 U.S. 897, 922 (1984), however, the Supreme Court carved out an exception to the exclusionary rule, holding that evidence obtained in violation of the Fourth Amendment should not be suppressed in circumstances where the evidence was obtained by officers acting in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate, even if that warrant was later determined to be invalid.  *People v.*

11

*Gutierrez*, 222 P.3d 925, 941 (Colo. 2009); *see also* § 16-3-308(4)(a), C.R.S. 2024 (providing that evidence that would otherwise be excluded as the result of an invalid warrant should be admitted when the officer's conduct was pursuant to a "reasonable, good faith belief that [the warrant] was proper"). There are only four circumstances that will render an officer's reliance on a warrant unreasonable:

> (1) where the issuing magistrate was misled by a known or recklessly made falsehood; (2) where the issuing magistrate wholly abandoned the judicial role; (3) where the warrant is so facially deficient that the officer cannot reasonably determine the particular place to be searched or things to be seized; or (4) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Miller*, 75 P.3d at 1114; *see also People v. Seymour*, 2023 CO 53, ¶ 64. Dent does not argue that the officer who requested the search warrant made any misleading statements, nor does he suggest that the issuing magistrate abandoned the judicial role when approving the warrant application. Moreover, we have already determined that the affidavit adequately set forth probable cause. That leaves us with only the third category — whether the warrant was "so

12

facially deficient . . . in failing to particularize the place to be searched or the things to be seized . . . that the executing officers c[ould not] reasonably presume it to be valid." *Leon*, 468 U.S. at 923. For the reasons below, we conclude the overbroad statement in the warrant's first paragraph did not render it so facially deficient as to preclude the application of the good faith exception.

¶ 23 First, at the time that the warrant was issued, no Colorado case had held that a search warrant issued to a cell phone provider was "subject to the same 'special protections applicable to cell phone searches.'" *Rodriguez-Ortiz*, ¶ 116 (Schock, J., specially concurring) (quoting *People v. Davis*, 2019 CO 24, ¶ 19). Without such precedent, we cannot say a reasonable officer would be expected to conclude "that a warrant for cell records held by a third party would be subject to the same particularity standard as a warrant for the defendant's cell phone itself." *Id.* (Schock, J., specially concurring).

¶ 24 Second, although the "any and all" statement in the warrant's first paragraph could have been used to force a general search of the records held by T-Mobile, nothing in the record suggests that a general search actually occurred. To the contrary, by all accounts,

it appears that T-Mobile's compliance with the warrant was guided by the nineteen paragraphs that detailed the information sought and placed reasonable temporal limits on the scope of the data collection. The absence of any suggestion that the officer in fact used the warrant to demand more information or received more information than what was covered by the specific categories listed supports an inference that the officer procured and executed it in good faith.

¶ 25    Third, the search warrant was accompanied by an extensive affidavit that "set forth in detail the crimes under investigation, including the date, location, and victim," and the "officer who signed that affidavit was the same officer who conducted the search of the cell records." *Id.* at ¶ 118 (Schock, J., specially concurring) ("Th[e] officer therefore could have reasonably understood the warrant to be read together with the affidavit as limiting the search to evidence of the crimes under investigation . . . ."). This fact, along with the express incorporation of the affidavit into the warrant, reduced the likelihood that the "any and all" language would be used to force T-Mobile to collect and disclose records that

fell outside the specific requests outlined in the warrant's nineteen remaining paragraphs.

¶ 26 Given all this, we conclude that the deterrent purpose of the exclusionary rule would not be served by excluding the evidence collected from the overbroad search warrant. *See People v. Altman*, 960 P.2d 1164, 1168 (Colo. 1998) (holding that because the goal of the exclusionary rule is to deter improper police conduct, it should not be applied in cases where the deterrence purpose is not served). The trial court therefore appropriately applied the good faith exception and denied Dent's motion to suppress.

### III. Text Messages

¶ 27 Dent contends that the trial court erred by overruling his hearsay and confrontation objections to the admission of the records of seven text messages that T-Mobile turned over in response to the search warrant. We agree.

### A. Standard of Review

¶ 28 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Dominguez*, 2019 COA 78, ¶ 13. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or is contrary to law. *Id.* We review de

novo a trial court's decision on whether statements are hearsay. *People v. Hamilton*, 2019 COA 101, ¶ 12.

¶ 29 Dent preserved his hearsay objection to the records in question. We therefore review the trial court's ruling on that issue for harmless error. *See People v. Rodriguez*, 2022 COA 11, ¶ 13. Because we conclude that reversal is required based on the improper admission of the records under the rules of evidence, we need not reach Dent's alternative contention that the admission of the records also violated his right to confront the witnesses against him.

## B. Applicable Law

¶ 30 Hearsay evidence is not admissible except as provided by the Colorado Rules of Evidence or other rules or statutes. CRE 802. Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Our rules of evidence recognize exceptions that allow admission of hearsay for certain inherently reliable out-of-court statements, such as business records that meet certain criteria. *People v. N.T.B.*, 2019 COA 150, ¶ 24; *see also* CRE 803. Where evidence contains multiple layers of

possible hearsay, the trial court must analyze each layer separately to determine whether any exceptions apply. *People v. Phillips*, 2012 COA 176, ¶ 101; *see also* CRE 805.

¶ 31     The evidentiary rules governing out-of-court statements exclude some out-of-court statements from the definition of hearsay. As relevant here, an out-of-court statement made by a criminal defendant, when offered by the prosecution, is an admission by a party-opponent and, therefore, is not hearsay. *See* CRE 801(d)(2); *People v. Crespi*, 155 P.3d 570, 575 (Colo. App. 2006). Similarly, "[i]nformation automatically generated by machines is not hearsay because no 'person' or 'declarant' made a 'statement' within the meaning of CRE 801." *People v. Abad*, 2021 COA 6, ¶ 54.

## C.     Additional Facts

¶ 32     The seven text messages were produced in response to the T-Mobile warrant and were sent from Dent's phone to unidentified recipients. In the three of the messages, the sender identified himself as "Phil." In the other four messages the sender wrote, among other things, that he "got this car new plates . . . and wiped

it down really well for prints," that he had "torched" the van, and that he "had to get rid of all evidence."

¶ 33    Two detectives testified on behalf of the prosecution regarding the text messages. The first, Detective Robert Shiller, requested the T-Mobile search warrant and signed the accompanying affidavit. The second, Detective Adam Alderson, converted the data files that T-Mobile provided into a more readable spreadsheet format. The prosecution did not present any testimony from T-Mobile explaining how the data files were created, and the prosecution did not argue that the data files qualified for admission under the hearsay exception for business records outlined in CRE 803(6).

¶ 34    Dent objected to the admission of the messages on hearsay and confrontation grounds.[1] Defense counsel pointed out that there were two layers of potential hearsay — Dent's statements (i.e., the words in the text messages) and the records provided by T-Mobile that contained those statements (i.e., the data file that Alderson converted into a spreadsheet). As relevant here, the

_____

[1] Defense counsel also argued that the records had not been properly authenticated and that they should be excluded due to a discovery violation, but Dent does not reassert these arguments on appeal.

18

prosecution responded that the messages themselves were not hearsay because they were Dent's statements, and thus admissions of a party-opponent under CRE 801(d)(2), and that, as a result, it was unnecessary to satisfy the business records exception to the hearsay rule for the spreadsheets.

¶ 35 The trial court overruled Dent's objections. After acknowledging that the prosecution had not attempted to admit the spreadsheets as records of regularly conducted business activity under CRE 803(6), it concluded that the data provided by T-Mobile was a "digital echo" of the statements that Dent made in the messages themselves. As a result, the court ruled, the prosecution did not need to provide any further evidence establishing how T-Mobile compiled and transmitted the data provided in response to the search warrant.

## D. Analysis

¶ 36 Testimony about Dent's text messages involved at least two layers of potential hearsay: (1) the records provided by T-Mobile and (2) the contents of any statements in those records. Dent appears to concede that the text messages themselves were not hearsay because they were statements of a party-opponent. *See* CRE

801(d)(2).  But he contends that the record does not support the trial court's decision to admit the underlying records created by T-Mobile, which conveyed that Dent "sent those messages to certain phone numbers at certain dates and times."

¶ 37    As we have already discussed, the prosecution did not offer any evidence at trial establishing how T-Mobile compiled or transmitted the records that it provided in response to the search warrant, instead arguing that the court need not separately apply the hearsay rules to the T-Mobile records because they contained only Dent's nonhearsay statements.  On appeal, the People acknowledge that the T-Mobile records constituted a second level of potential hearsay but argue that they fell outside of the hearsay rule because they were machine generated and thus not the statements of a "person," *see Abad,* ¶ 54, and did not "contain human analysis, opinion, observation, or interpretation."

¶ 38    It is certainly possible that the records provided by T-Mobile were generated by the internal operations of a computer.  As the proponent of the evidence, however, the prosecution had the burden of establishing that the records were machine generated without human input or interpretation.  *See Hamilton,* ¶¶ 24-26;

20

*N.T.B.*, ¶ 37; *see also People v. Vanderpauye*, 2023 CO 42, ¶ 25. The prosecution did not make that showing — indeed, it did not offer any evidence at all about the mechanism that T-Mobile used to generate the records. True, Shiller testified that the raw data provided by T-Mobile arrives "in a format that is unintelligible to the average eye," but that statement does not support the trial court's subsequent conclusion that the reason "there was nobody who could testify as to the inputting of that data" was "because it's not done by a person" and, instead, is "just done by a computer." Even if the raw data *appeared* to be machine generated, and even if it *appeared* to be generally consistent with call logs and similar types of records properly admitted in other cases, the evidence before the trial court was simply not sufficient to support a conclusion as to how the records came to be. To be sure, "[h]uman agency [was] at some level necessarily involved . . . and often interpretation is laced throughout reading the machine's response." 2 Kenneth S. Broun et al., *McCormick on Evidence* § 249, Westlaw (Robert P. Mosteller ed., 9th ed. database updated Feb. 2025).

¶ 39     Without *some* information from the source of the records about how they were compiled, the trial court was not in a position

to determine that they were machine generated and thus outside the scope of the hearsay rule. As a result, we conclude that the court erred by admitting the T-Mobile records that contained the seven text messages described by Shiller and Alderson. Given the substantially inculpatory content of the messages, we accept the People's concession that the erroneous admission of the T-Mobile records could not have been harmless with respect to the charges of aggravated motor vehicle theft and arson.

## IV. Restitution

¶ 40 Lastly, Dent contends the district court erroneously awarded $98.35 in restitution for Turco and her husband's stay at a Holiday Inn shortly after the carjacking.[2] We are not persuaded.

### A. Additional Facts

¶ 41 Prior to the carjacking, in early January, Turco sold her Colorado home and was preparing to move to join her husband in Hawaii. As she was wrapping up her affairs throughout that

---

[2] Even though we have reversed two of Dent's convictions arising from the carjacking, he does not challenge his robbery conviction on appeal. The People maintain that Turco's hotel expense was proximately caused by the robbery.

month, she stayed with her son, with friends, and at times in her van.

¶ 42    On the day of the carjacking, Turco was planning to, and did, stay with friends.  Two days later, Turco's husband flew in from Hawaii to help her look for her stolen van, as well as to assist her with the insurance claim and with law enforcement.  He rented a car and drove from the airport to meet Turco in Littleton.  The two then booked a hotel room for the night.

¶ 43    At trial, Turco explained the couple "spent the night at a hotel" because the friends with whom she had stayed "already been through 48 hours of carjacking" and traveling to their son's house would have meant a late-night drive to Loveland.

¶ 44    The trial court granted restitution for the hotel.  It found the couple's hotel stay was proximately caused by Dent's conduct.  The court explained:

> [Turco] was living in this van going back and forth to friends' house and [her] son's house, and they were unable to go to their friends' house or their son's house because Mr. Dent stole their car.  So, [the couple] had to choose whether or not to go back that night or to just stay someplace.

¶ 45     Dent now argues that the court should not have awarded restitution for the hotel stay because its reasoning was unsupported by the facts. Turco actually did have access to a rental car once her husband arrived. Therefore, they could have driven to their friend's or son's house rather than book a hotel.

B.     Applicable Law and Standard of Review

¶ 46     Convicted defendants must "make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(b), C.R.S. 2024. Restitution is defined as "any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2024. Proximate cause means a cause that in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained. *People v. Perez*, 2017 COA 52M, ¶ 9. Thus, "[u]nlawful conduct that is broken by an independent intervening cause cannot be the proximate cause of injury to another." *Martinez v. People*, 2024 CO 6M, ¶ 13 (quoting *People v. Stewart*, 55 P.3d 107, 116 (Colo. 2002)). But "[t]o qualify as an intervening cause, an event must be unforeseeable and one in which the accused does not participate."

*Id.* (quoting *Stewart*, 55 P.3d at 121). The prosecution bears the burden of proving, by a preponderance of the evidence, both the amount of restitution owed and that the victim's losses were proximately caused by the defendant. *Perez*, ¶ 10.

¶ 47     Whether there was sufficient evidence to support a restitution award is a matter we review de novo. *People v. Stone*, 2020 COA 24, ¶ 7. In undertaking such review, we ask "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused that amount of loss." *Id.* (quoting *People v. Barbre*, 2018 COA 123, ¶ 25). Restitution is mandatory when proximate cause is established. *Martinez*, ¶ 17. However, because proximate cause is a factually intensive inquiry, we review the district court's determination of proximate cause in a restitution proceeding for clear error. *Id.* at ¶ 32.

## C.     Analysis

¶ 48     The record before us supports the district court's determination of foreseeability and proximate cause. Turco's car had South Dakota plates when Dent stole it, supporting an

inference that it was foreseeable that, if her van was stolen, she would not have local accommodations.  *See id.* at ¶ 34.  That inference is further buoyed by Turco's testimony that, while preparing for her move, she either stayed with friends, with her son, or in her van.  And while it may have been true that Turco could have driven the rental car to her son's or friend's house when her husband came into town, the robbery still reduced Turco's options for accommodations.  In other words, if Dent had not stolen the van, Turco would have had no need to look elsewhere for a place to stay because she could have slept in the van rather than at her friend's or son's houses.  Given this record support, we must affirm the restitution award.

## V.    Disposition

¶ 49    We reverse Dent's convictions or aggravated motor vehicle theft and arson.  We leave undisturbed his convictions for robbery, burglary, and third degree assault and affirm the restitution award. The case is remanded to the trial court for further proceedings consistent with this opinion.

JUDGE WELLING and JUDGE JOHNSON concur.

26